221 So.2d 816

Milton BERTRAND

v.

COAL OPERATORS CASUALTY
COMPANY.

No. 49065.

Nov. 12, 1968.

On Rehearng March 31, 1969.

Preston N. Aucoin, Ville Platte, Daniel J. McGee, Mamou, for plaintiff-appellee-applicant.

Downs & Gremillion, Alexandria, for respondent.

SUMMERS, Justice.

Certiorari was granted to review a judgment of the Third Circuit which denied the workmen's compensation claim of plaintiff Milton Bertrand.

The employer, Courville Concrete Company, was engaged in the manufacture of concret culverts at Mamou in Evangeline Parish. Plaintiff, who was 57 years old in July 1964, had been employed with that firm for 16 years. As a principal part of his employment he was required to mix concrete, transport it by wheelbarrow, pour it into forms and otherwise perform heavy labor exposed to the heat of the sun in an unsheltered area of the manufacturing plant.

As related in part by Dr. B. J. Manuel, plaintiff's medical history discloses that Dr. Manuel performed surgery on him to repair bilateral herniae a number of years prior to July 9, 1964, at which time plaintiff's heart was thoroughly examined and found to be normal and sound. He next consulted Dr. Manuel on July 9, 1964 for an episode of weakness, dizziness or near fainting which occurred while plaintiff was doing heavy work as a laborer with Courville Concrete Company. Dr. Manuel examined him at the Savoy Hospital and made an electrocardiogram, which he read and from which he concluded that plaintiff had a nodal tachycardia, a conduction defect impairing the heart's response to impulses regulating its beat.

He was put to bed, but after overnight rest and medication plaintiff was discharged from the hospital and returned home. Upon advice of his doctor, he did not resume work that summer. In the fall of the year, about September 14, 1964, because he was feeling well and the weather was cool, plaintiff was permitted by his doctor to return to his job with Courville Concrete Company. He worked there at his usual tasks without incident until June 1, 1965.

While at work on June 1, 1965 plaintiff's heart began to beat erratically and he almost "blacked out" and fell to his knees, but he did not lose consciousness. He returned to Dr. Manuel with essentially the same complaints made by him after the July 1964 episode. Another electrocardiogram was made in connection with his reexamination, medication was prescribed and he went home to bed. Two days later he again visited Dr. Manuel and reported he was feeling fine. At this time he was advised to stop working because Dr. Manuel thought the work with Courville was incompatible with his heart condition. The doctor felt that continued work in the hot sun might bring about a "full blown coronary" and plaintiff's death. This decision appears to have been influenced to some extent by a history of heart disease in plaintiff's family, a brother having died of heart disease some time prior to this latter episode, and it was known, too, that another

brother had arteriosclerotic disease. Plaintiff has not worked since.

Suit was instituted by plaintiff on September 9, 1965 claiming compensation for total permanent disability, alleging that the episodes of July 9, 1964 and June 1, 1965 were both responsible for his condition. Courville Concrete Company's compensation insurer at the time of the episode of July 9, 1964 was Highlands Insurance Company; at the time of the June 1, 1965 episode its insurer was Coal Operators Casualty Company. Both insurers were joined as defendants in plaintiff's suit. In time, however, plaintiff and Highlands Insurance Company compromised the claim based upon the July 9, 1964 episode. Our only direct concern, therefore, is with the claim against Coal Operators Casualty Company and the episode of June 1, 1965.

In defense of the claim, defendant contends that on June 1, 1965 plaintiff suffered an attack of angina pectoris from which he recovered almost immediately with no residual ill effects, and the real cause of plaintiff's disability, if any, is a disease of long standing known as arteriosclerosis which has become progressively worse. This condition, defendant contends, is neither caused nor aggravated by the episode of June 1, 1965 or by plaintiff's work at any time.

The central issue thus presented is whether there is any causal connection between the accident of June 1, 1965 and the disability of which plaintiff complains. It is substantially a factual question and depends, to a large extent, upon the testimony of the doctors who examined and treated plaintiff.

Since the writs were granted and the record has been made available for our review, we find we are in agreement with the Third Circuit. Plaintiff has failed to establish by a preponderance of the evidence that his alleged disability was caused or aggravated by the episode of June 1, 1965 and his claim for compensation must be denied.

Dr. Rufus Craig, of Alexandria, Louisiana, a specialist in internal medicine, examined plaintiff in October 1965 when plaintiff's counsel referred him to Dr. Craig. On this occasion plaintiff's medical history was taken, and a complete examination including blood count, urinalysis, chest x-ray and electrocardiogram was performed. Based upon the data obtained, Dr. Craig was of the opinion that plaintiff had arteriosclerotic heart disease with angina pectoris. In this written opinion he stated: "Even though both of Mr. Bertrand's episodes occurred while at work and while he was actively engaged in strenuous physical activity, I am unable to say that his heart disease was precipitated by his work since this was the usual effort that he was engaged in each day."

On September 21, 1966 Dr. Craig again saw plaintiff, this time at the instance of counsel for defendants. Another complete examination was performed and an interval history recorded. As a result of this examination, Dr. Craig confirmed his previous finding of arteriosclerotic heart disease. In giving his deposition, Dr. Craig stated that though the cause of arteriosclerosis is unknown, it is probably not a result of trauma, but is more likely, in part, a normal process of aging. We think the essence of the controverted fact of causal connection between the episode of June 1, 1965 and plaintiff's alleged disability is dealt with and satisfactorily explained in the following dialogue between counsel and Dr. Craig:

"Q. In this particular case did you see any indication of trauma or over-exertion brought on this ultimate diagnosis that you described?

"A. The angina pectoris was precipitated by—if you consider physical exertion trauma, yes, in that during the effort that he was engaged in, the demand for blood for the heart was greater than these narrowed, sclerosed coronary arteries were able to provide at that particular time. Therefore, he had an inadequate oxygen supply to the heart muscle with resultant pain. When he ceased his activity the demand decreased, the supply caught up

with the demand, the pain ceased. In other words angina pectoris is a syndrome which is completely reversible, once the episode is over with, the status of the heart is as it was preceding the attack of angina.

\* \* \* \* \* \*

"Q. Doctor, in this case as in all compensation cases it's necessary to establish whether or not the disability the man is found to be suffering from is attributable to the trauma complained of. In this case apparently the trauma complained of was working in the hot sun, blacking out and falling to his knees. Did you find anything that will indicate to you to some degree of conclusiveness that this traumatic experience resulted in the disability that the man complains of?

"A. By history the first episode of angina pectoris which this man complained with occurred while involved in the activity of pushing his wheelbarrow at work. When he ceased pushing the wheelbarrow the attack ceased—to answer that, the attack could just as well have occurred had he been say shovelling dirt or doing some other physical activity at home and when this attack was over with there was nothing disabling there except he still

had a basic underlying coronary artery disease which could lead to further attacks of angina pectoris on adequate effort or effort in overeating or effort in eating and emotion and so on.

"Q. Is it your opinion then that the underlying disease brought on the attack as distinguished from the pushing of the wheelbarrow?

"A. Without the underlying disease he could not have had the attack—yes."

Dr. Craig testified that he could not determine whether plaintiff was disabled at the time of his examinations without subjecting him to a program of gradually increasing activity and observing the results. Moreover, he saw no reason why the episodes complained of would have any effect upon other episodes in the future.

Doctor Roderick P. Perron of Mamou examined the two electrocardiograms taken at the time of the episodes of July 9, 1964 and June 1, 1965. He also read the testimony of Dr. Manuel and Dr. Craig to learn the facts upon which they formed their opinions. In a question based upon a hypothesis, which was actually a recitation of the facts and circumstances of plaintiff's case, he was of the opinion that plaintiff had, and still has, arteriosclerotic heart disease. His testimony was that the episodes of July 9, 1964 and June 1, 1965 were true angina or possibly a mild coronary occlu-

sion. Plaintiff's heart condition, he felt certain, was present before June 1, 1965, or, for that matter, before July 9, 1964.

Arteriosclerosis, in his view, is a disease which develops slowly over the years, and the attacks which plaintiff experienced at work were merely precipitated symptoms of an already existing condition. Arteriosclerosis, he explained, is a degenerative condition involving a hardening of the arteries which supply blood to the heart. Exertion, emotion and eating, he said, increase the demand for oxygen by the heart. Because the sclerosed or occluded arteries cannot supply the additional need for oxygen under these circumstances by increasing the blood supply, the lack of adequate oxygen·induces spasm of the heart muscles and produces coronary insufficiency or angina pectoris. This, according to Dr. Perron, was the cause of the episodes of July 9, 1964 and June 1, 1965 which plaintiff suffered; and these incidents neither caused nor aggravated the condition of arteriosclerosis but simply brought about a manifestation of symptoms that the disease was present in the patient. In summary Dr. Perron's testimony was that the episodes complained of had only a temporary effect, and plaintiff's heart was not injured or impaired thereby.

Thus it is seen that the testimony of Dr. Manuel differs from the testimony of Dr. Craig and Dr. Perron. Faced with these inconsistencies in the expert testimony,

which is often the case, we have accepted the theories and opinions of Dr. Craig and Dr. Perron as being more probably correct under the facts and circumstances. The consequence is that plaintiff has not produced a preponderance of evidence in support of his claim; failing in the discharge of this burden which the law imposes, plaintiff cannot recover.

A like question was presented and disposed of by this court in Nickelberry v. Ritchie Grocer Co., 196 La. 1011, 1020, 200 So. 330, (1941) where we said:

"When the disease began, what was its origin, and the rapidity with which it has progressed, are all matters of pure speculation. The mere fact that a workman develops heart disease while employed by another does not entitle him to compensation. The employer is not the insurer of his employees. There must be an accident to furnish the basis of any such claim, that is to say, something sudden, undesigned or unexpected and that accident must either cause or aggravate the disease which is the cause of the disability."

See also Seals v. Potlatch Forests, Inc., 151 So.2d 587 (La.App.1963); Malone, Louisiana Workmen's Compensation Law and Practice, Sec. 256 (1951) and 1964 pocket part.

For the reasons assigned, the judgment of the Court of Appeal is affirmed.

FOURNET, C. J., and BARHAM, J., dissent for written reasons assigned.

BARHAM, Justice (dissenting).

The trial court, the Court of Appeal, and the majority of this court all have concluded that the plaintiff suffered a heart attack as a result of an accident within the contemplation of our Workmen's Compensation law, and that he is totally and permanently disabled by heart disease from hard manual labor. The trial court found causal connection between the accident and the disability. The majority opinion would affirm the appellate court and deny a causal connection between the accident and the disability.

I agree that the issue presented is, as stated by the majority, " * * * whether there is any causal connection between the accident of June 1, 1965 and the disability of which plaintiff complains". I differ with their conclusion that it is a question of fact dependent upon the testimony of the doctors who examined and treated the plaintiff. It is my belief that all of the testimony supports a legal conclusion contrary to that reached by the majority, and for the purposes of this dissent I will accept the majority's theory of which medical testimony is correct.

The majority cite Seals v. Potlatch Forests, Inc., 151 So.2d 587 (La.App.3rd Cir. 1963), cert. den. 244 La. 398, 152 So.2d 63, which the appellate court also relied upon

in arriving at its judgment. Factually that case is almost identical with the case presented to us. In each case the plaintiff was suffering from arteriosclerotic cardiovascular disease when he experienced an attack of angina as a result of an accident. It has been reasoned in each case that the plaintiff failed to carry by a preponderance of the evidence his burden of proving that there was *arterial or heart* change after the accident or that the *disease, arteriosclerosis,* was caused or aggravated by the accident.

The medical testimony in this case as well as the reasoning of the court has been directed to a determination of whether the pre-existing *disease* has been aggravated or the *affected organ* changed by the accident. This is not the question which the theory of the Workmen's Compensation Act requires us to answer. The query should be: Has the plaintiff's physical condition been changed by reason of the accident so as to render him disabled and unfit for employment?

The trial judge reasoned from personal observation and lay testimony that there was in fact a physical change in the plaintiff, i. e., he is now pale, perspires heavily, and cannot tolerate heat. All of the medical testimony concludes that the second

angina attack in the presence of arteriosclerotic cardiovascular disease precludes plaintiff's return to work.[1] After the first attack the plaintiff had specific medical approval to return to work and was actually performing hard physical labor without any apparent symptoms of either disease or disability. Since all medical authorities would now refuse to allow the plaintiff to return to work following the second coronary, not only is it to be presumed but it must be deduced that the second attack produced some change in the body of the plaintiff. It must follow that there is a causal connection between the accident and the disability.

It was noted in the dissent in the Seals case, supra, that medical experts are unable to determine the cause, the time of onset, the rate of acceleration, or the reason for the progress of arteriosclerotic cardiovascular disease. A plaintiff cannot be required to submit more proof than is here offered that he has suffered disability by reason of a causally connected accident when any additional proof must come from an inexact science whose practitioners admittedly are very unknowledgeable concerning the disabling cause.

Before the accident this plaintiff though suffering from arteriosclerotic cardiovascu-

---

1. As the Court of Appeal properly reasoned, even Dr. Craig's suggestion that "plaintiff could be given a series of 'graded exercises' under a doctor's close observation to determine how much phys-

ical exertion his heart would tolerate" has the legal effect of classifying the plaintiff as disabled until such tests could be completed.

lar disease exhibited no disabling symptoms of that disease and was apparently in good health and able to respond to the physical demands of his employment. He was working with medical approval and with his employer's full knowledge of the existing dormant disease. He has established an accident and his inability to return to work. Medical opinion which now requires the plaintiff to desist from work must therefore recognize a change in his physical condition because of the accident. I find that the plaintiff has established by a preponderance of the evidence the causal connection between the accident and the disability; indeed, I find it is impossible to conclude otherwise.

The Seals case and the majority here have narrowly defined and overnicely refined the issue. The legal criterion in compensation cases involving heart disease should be whether the accident caused a change in the employee's physical condition which is disabling, and not whether the accident changed the diseased organ of the employee. The residual condition from an accidental injury which substantially increases the possibility of recurrence of a disabling or death-dealing episode is legally disabling and is compensable under our Workmen's Compensation law.

The court should be concerned with the whole man and with the effect that an accident occurring during the course of employment has upon his earning ability.

The court should not offer as alternatives to an accidentally injured employee the return to work at great risk or the dependency upon public support. Workmen's compensation is a creation of the Legislature for the very purpose of localizing the economic responsibility in such situations.

I would specifically overrule Seals v. Potlatch Forests, Inc., supra, and I would award compensation benefits to this plaintiff. I respectfully dissent from the majority opinion.

FOURNET, Chief Justice (dissenting).

We granted a writ of certiorari in this case on the application of plaintiff (251 La. 867, 206 So.2d 714) to review the judgment of the Court of Appeals for the Third Circuit reversing a judgment in his favor and against the Coal Operators Casualty Company, his employer's insurer, granting him compensation on the basis of total and permanent disability for a period not to exceed 400 weeks at the rate of $35 a week, with legal interest. La.App., 204 So.2d 620.

The Court of Appeals, as had the trial judge, found: "There is little question that the heart attack suffered by plaintiff was an accident within the meaning of our Workmen's Compensation Law," and that "a clear preponderance of the evidence shows that plaintiff is now permanently and totally disabled by heart disease from

hard manual labor." The appellate court, nevertheless, denied plaintiff's claim for compensation on the ground there was no casual connection between the accident and the disability for which he claims compensation.

The case primarily relied on by the majority is Nickelberry v. Ritchie Grocer Company, 196 La. 1011, 200 So. 330, which decision, in my opinion, is factually inapposite, for there the court, recognizing the rule governing such cases in this state to be that "if excessive heat, or heavy lifting, or straining, *although usual and customary*, or both, cause *or contribute* to a physical breakdown, *or accelerate* its happening, the legal requirements necessary to constitute an accident are present and such cases are compensable," decided against the employee for the reason that under the particular facts of the case it was "not convinced that the temperature had any connection whatever with relator's present disability. * * * Relator continued to perform his usual manual labor for several months after experiencing the straining on which he bases the contention that he suffered an accident." The court further observed the employer "had no notice that the plaintiff claimed he was injured while in its employ until more than a year after the date it was claimed the injury occurred." Finally, the court concluded the facts were such they disclosed "plaintiff's ailments and disability * * .* were not traceable to

*an accident.*" (The emphasis has been supplied.)

The other case cited as authority—Seals v. Potlatch Forests, Inc., La.App., 151 So.2d 587—is more in point from a factual standpoint. However, this decision, from the same circuit as the instant case, while it might be persuasive, is not controlling. Moreover, it is in direct conflict with the decision of this court in Behan v. John B. Honor Company, 143 La. 348, 78 So. 589, L.R.A.1918F, 862, the landmark case in point in this state, where the prevailing jurisprudence was first laid down. See, also, Jackson v. Travelers' Insurance Company, 180 La. 43, 156 So. 159; and Hemphill v. Tremont Lumber Company, 209 La. 885, 25 So.2d 625.

In the Behan case, in an opinion written by the late Chief Justice Charles A. O'Niell, and where the identical defense was urged as in the instant case—i. e., "that the plaintiff's disability was not caused by the accident, but is the result of a disease that was lurking in his system before the accident"—the court stated it was "not aware of a decision of this court on the subject, but it is well settled in the jurisprudence elsewhere that the fact that a person was already afflicted with a dormant disease that might some day produce physical disability is no reason why he should not be allowed damages or compensation for a personal injury that causes the disease to become active or virulent and superin-

duces physical disability." In holding the accident compensatory, the court pointed out the facts established that "until the accident, he (plaintiff) was apparently in ordinary sound health, attending to his daily occupations, unconscious of being diseased, working regularly, earning large wages, and supporting his wife and daughter. *The injuries he suffered by the accident, and the immediate change in his physical condition, leave no reasonable doubt that the accident superinduced, and was the proximate cause of, the disability of which he complains.*" (The emphasis and word in parentheses has been supplied.)

Paraphrasing the rationale of this holding, until the accident in the instant case Bertrand was apparently in ordinary sound health, attending to his daily laborious manual duties, unconscious of being so diseased as to be unable to carry out these duties, working regularly, earning his usual wages for this type of work, and supporting himself and family, if he had one. The injuries he suffered by reason of the accident, and the immediate change in his physical condition, leave no reasonable doubt that the accident superinduced, and was the proximate cause of, the disability of which he complains.

The jurisprudence laid down in the Behan case was reaffirmed in Jackson v. Travelers' Insurance Company, 180 La. 43, 156 So. 169. In that case the appellate court, as in the case at bar, reversed a judgment of the district court favorable to the plaintiffs, such reversal by the appellate court being predicated on that court's conclusion that although the workman's death "did occur while he was at work," it was not "caused, activated, or materially accelerated by any accident arising out of his employment," but, instead, "was directly due to active, *progressive* syphilis." In disposing of this contention and reversing the holding of the appellate court, this court pointed out that the facts disclosed the decedent had, for 6 years, been employed in loading cross-ties weighing between 200 and 300 pounds. This precipitated a stomach hemorrhage from which he died some 5 or 6 days later. Under these facts, the court, in a unanimous decision, concluded that "the death of the deceased was caused by an accident arising out of his employment," and that "the injury, *added to the disease*, superinduced the physical disability that ended" in his death. (The emphasis has been supplied.)

In a still later case—Hemphill v. Tremont Lumber Company, 209 La. 885, 25 So.2d 625—in reliance on the jurisprudence established in the Behan and Jackson cases, the court said: "Since this case does not involve an accident causing external injuries or producing objective symptoms, we must look to the testimony of the medical experts to determine whether this is one of those cases that comes within our well-settled jurisprudence that the legal require-

ments are present to constitute an accident and an injury is compensable where excessive heat, heavy lifting or other strenuous efforts, *although usual and customary,* cause or contribute to a physical breakdown or accelerate its occurrence because of a pre-existing condition." In reversing the judgments of both the trial and appellate courts, which had denied the widow and minor child compensation, this court pointed out that until the afternoon on which the decedent was stricken with a pain in the region of his heart, that continued unabated until he died some 45 minutes later, he had been employed by the defendant as a carpenter for some 20 years, was never known to have been seriously ill or to have suffered from heart trouble. After reviewing the medical testimony at length, we concluded that the heat of the day and the strenuous work in which decedent was engaged at the time of the attack had precipitated it, and that his death was, therefore, compensable. (The emphasis has been supplied.)

In the instant case the facts disclose that plaintiff was operated on by Dr. B. J. Manuel for a double hernia in 1962, at which time there was no evidence whatever of any kind of heart disease or condition. He was at that time—and had been for many years—working for the Courville Concrete Company performing strenuous manual labor, such as mixing concrete, hauling it in wheelbarrows, and pouring it into various types of forms and in all kinds of weather. In July of 1964, after he had done this work for some 15 years with no ill effects, he suffered a heart attack while working in the hot sun in the performance of these labors, for which he recovered compensation. After following the treatment and rest prescribed by Dr. Manuel for a number of months, the doctor felt he was sufficiently recovered to return to work doing this same heavy manual work in September of 1964, and he was again so-employed by the Courville Concrete Company. He suffered another attack on June 1, 1965, while performing these duties, and, as a result, he is permanently disabled from pursuing these duties or similar work, a fact recognized by the trial court, the appellate court, and this court as having been established by a clear preponderance of the evidence.

Dr. Manuel, testifying as plaintiff's witness, stated that his condition was one that had been aggravated while working by "getting hot, and such as that," pointing out that, significantly, he had suffered both of these attacks during the hot summer months of June and July. When Dr. Rufus Craig, an expert called by the defendant, was asked if the blackout incident of June 1, 1965, was brought on by trauma or overexertion, he replied: *"The angina pectoris was precipitated by*—if you consider *physical exertion* trauma, *yes * * *."* Dr. Roderick P. Perron, called as a witness by

plaintiff, stated that the heat and working conditions brought on the attack. His words, in reply to the question as to whether the heat and the strenous labors brought on the attack, are as follows: "* * * certainly * * * the type of work he was doing, great demands on his sick heart, the high temperature that * * * was obviously present in the months of June and July, in this section of the country, and the humidity * * * which actually produces more of a work load on the heart than the temperature * * * *all of these factors together, working in the sun, the humidity and type of work he was doing precipitated this.*" (The emphasis has been supplied.)

Clearly under the jurisprudence of this court, that was established more than 50 years ago with the decision in the Behan case, if Bertrand had died within 45 minutes after the attack of June 1, 1965, as in the Hemphill case, or 5 or 6 days later, as in the Jackson case, under the conditions reflected by the facts of this case, there is no question but that his death would have been compensable. Moreover, the case cannot be differentiated from the Behan case, in which this court pointed out: "* * * the fact that a person was already afflicted with a dormant disease that might some day produce physical disability is no reason why he should not be allowed damages or compensation for *a personal injury that causes the disease to become active or virulent and superinduces physical disability.*"

To the same effect are the Jackson and Hemphill cases. (The emphasis is supplied.)

Furthermore, both the trial court and the appellate court found—and this is, in substance, approved by the majority—as a fact "that the heart attack suffered by plaintiff was an accident within the meaning of our Workmen's Compensation Law," and "a clear preponderance of the evidence shows that plaintiff is now permanently and totally disabled to heart disease from hard manual labor," yet the appellate court and this court's majority conclude he is not entitled to compensation. I can think of no sound reason or logic to support such a conclusion. It is, to say the least, contradictory, and it is difficult for me to rationalize why Bertrand, who had been in apparent good health and was working at this hard labor up until the time of the accident that gave rise to this suit, and which incident was admittedly triggered by the strenuous type of work he was doing and the heat of the day, is not entitled to compensation, although he has, since that date, been permanently disabled to pursue this same type of work.

For these reasons, I respectfully dissent from the majority view.

*On Rehearing.*

BARHAM, Justice.

Certiorari was granted to review a judgment of the Third Circuit Court of Appeal

which denied the workmen's compensation claim of the plaintiff Milton Bertrand, thereby reversing the trial court's award of compensation for total permanent disability. The events which led up to the claim are well stated in our opinion on first hearing, and we adopt and incorporate in this opinion that portion of our original decision.

"The employer, Courville Concrete Company, was engaged in the manufacture of concrete culverts at Mamou in Evangeline Parish. Plaintiff, who was 57 years old in July 1964, had been employed with that firm for 16 years. As a principal part of his employment he was required to mix concrete, transport it by wheelbarrow, pour it into forms and otherwise perform heavy labor exposed to the heat of the sun in an unsheltered area of the manufacturing plant.

"As related in part by Dr. B. J. Manuel, plaintiff's medical history discloses that Dr. Manuel performed surgery on him to repair bilateral herniae a number of years prior to July 9, 1964, at which time plaintiff's heart was thoroughly examined and found to be normal and sound. He next consulted Dr. Manuel on July 9, 1964 for an episode of weakness, dizziness or near fainting which occurred while plaintiff was doing heavy work as a laborer with Courville Concrete Company. Dr. Manuel examined him at the Savoy Hospital and made an electrocardiogram, which he read

and from which he concluded that plaintiff had a nodal tachycardia, a conduction defect impairing the heart's response to impulses regulating its beat.

"He was put to bed, but after overnight rest and medication plaintiff was discharged from the hospital and returned home. Upon advice of his doctor, he did not resume work that summer. In the fall of the year, about September 14, 1964, because he was feeling well and the weather was cool, plaintiff was permitted by his doctor to return to his job with Courville Concrete Company. He worked there at his usual tasks without incident until June 1, 1965.

"While at work on June 1, 1965 plaintiff's heart began to beat erratically and he almost 'blacked out' and fell to his knees, but he did not lose consciousness. He returned to Dr. Manuel with essentially the same complaints made by him after the July 1964 episode. Another electrocardiogram was made in connection with his reexamination, medication was prescribed and he went home to bed. Two days later he again visited Dr. Manuel and reported he was feeling fine. At this time he was advised to stop working because Dr. Manuel thought the work with Courville was incompatible with his heart condition. The doctor felt that continued work in the hot sun might bring about a 'full blown coronary' and plaintiff's death. * * * Plaintiff has not worked since.

"Suit was instituted by plaintiff on September 9, 1965 claiming ·compensation for total permanent disability, alleging that the episodes of July 9, 1964 and June 1, 1965 were both responsible for his condition. * * * [The claim based upon the 1964 episode was compromised.] Our only ·direct concern, therefore, is with the claim against Coal Operators Casualty Company and the episode of June 1, 1965.

"In defense of the claim, defendant contends that on June 1, 1965 plaintiff suffered an attack of angina pectoris from which he recovered almost immediately with no residual ill effects and the real cause of plaintiff's disability, if any, is a ·disease of long standing known as arteriosclerosis [coronary sclerosis] which has become progessively worse. This condition, defendant contends, is neither caused nor aggravated by the episode of June 1, 1965 or by plaintiff's work at any time.

"The central issue thus presented is whether there is any causal connection between the accident of June 1, 1965 and the disability of which plaintiff complains. * * *"

It is not only admitted but clearly established that the plaintiff suffered an acci-

dent within the meaning of our workmen's compensation law. Dr. Manuel, his family physician, has diagnosed the accident-induced injuries of both 1964 and 1965 as "nodal tachycardia". Undoubtedly the electrocardiograms (EKG's) upon the occasion of both accidents gave a reading of tachycardia (rapid heart beat). Both Dr. Manuel and Dr. Perron examined these EKG's, and according to Dr. Perron's testimony the reading of the July 9, 1964, EKG showed a heart rate of 152. Heart pulsations in excess of 100 are rapid (tachycardia) and below 60 slow (bradycardia). Dr. Manuel concluded from the tachycardia reflected by the EKG's, other observable symptoms, and his particular knowledge as family physician that the plaintiff had a preexisting defective atrioventricular node,[1] and that exertion caused a conduction fault in his heart. He testified that the first and second accidents were of similar nature and duration.

Dr. Craig saw the plaintiff Bertrand upon two occasions, one four months and the other over a year after the second accident. He took a history and each time performed a general examination which included an EKG. The EKG's done upon

---

1. A.V. node. There are two nodes (neurocardiac tissue), the sino-auricular node ("pacemaker") which initiates the beat for the muscles of the atria, and the atrioventricular node which initiates the impulses which pass through the atrioventricular bundle, or "Bundle of His", to the muscles of the ventricles and controls the discharge of blood to the lungs (from the right ventricle) and to the body generally (from the left ventricle). Dr. Manuel was not explicit as to which node he meant, but Dr. Perron referred to the atrioventricular node; we therefore assume that it was the latter which concerned Dr. Manuel.

these occasions did not reflect rapid heart beat. Dr. Perron never saw the plaintiff, but testified upon hypotheses which related the facts and circumstances given in the testimony of the other doctors, with reliance upon the electrocardiograms made by Dr. Manuel in connection with both episodes. Both Dr. Perron and Dr. Craig were of the opinion that the plaintiff suffered from coronary sclerosis before both episodes. They admitted that the exertion upon each occasion caused the plaintiff to black out, become dizzy, and exhibit other symptoms, and it was their diagnosis that the arteries which fed the heart muscles were so sclerosed or restricted that during those periods of exertion they could not supply a sufficient quantity of blood, and that the plaintiff had either angina pectoris ("chest pain" from a coronary insufficiency) or possibly even a slight occlusion.[2]

It is not essential for this opinion and our ultimate determination to accept or reject either the diagnosis of Dr. Manuel or that of Drs. Craig and Perron. The plaintiff on June 1, 1965, had a preexisting disease of the heart, either a conduction problem caused by a defect in the atrio-

ventricular node which improperly stimulated the ventricles of the heart, or coronary sclerosis which caused blood to be improperly fed to the heart muscles. Because of the exertion on that date the disease manifested itself in the manner previously described. All doctors now find him totally and permanently disabled and therefore precluded from returning to work because of this episode.[3]

Dr. Manuel did not testify that the 1965 episode aggravated the defective node. Drs. Craig and Perron did not testify that the 1965 episode aggravated or accelerated the arteriosclerotic heart disease. In fact, Dr. Craig testified that the extraordinary yet natural process of the body in repairing its defects apparently created newer and better channels or arteries to the heart muscle in the interval of one year between the plaintiff's visits to him, and that this was reflected in the second EKG he made. What has happened to the plaintiff, according to all of the medical testimony, is that his total physical being and capacity have so changed that because of the symptoms exhibited (tachycardia *or* angina pectoris) and the preexisting disease (defective

---

2. Occlusion may be caused by a clot formation or concentration of excess material in the arteries (atheroma) which would stop the flow of blood. "Occlusion" must have been used loosely in the medical testimony since it literally means *closure* and produces an *infarct* (dead heart tissue), which is readily observed on an electrocardiogram; and yet it is denied there was any such showing.

3. As the Court of Appeal properly reasoned, even Dr. Craig's suggestion that " * * * plaintiff could be given a series of 'graded exercises' under a doctor's close observation to determine how much physical exertion his heart would tolerate" has the legal effect of classifying the plaintiff as disabled until such tests could be completed.

atrioventricular node *or* coronary sclerosis) he cannot return to work of a character similar to that which he had successfully done without pain, complaint, or disability for 16 years before the first episode and for nine months after it. All would agree that it is likely that the symptoms (angina pectoris *or* tachycardia) will recur, producing in themselves pain, blackouts, and collapses. Under both diagnoses a "full blown coronary" or fatal occlusion is likely to result from the extreme exertion required by his work.

■ The Court of Appeal relied upon Seals v. Potlatch Forests, Inc., 151 So.2d 587 (La.App.3rd Cir. 1963), cert. den. 244 La. 398, 152 So.2d 63, and Nickelberry v. Ritchie Grocery Co., 196 La. 1011, 200 So. 330 (1941). If the Nickelberry case holds anything more than that plaintiff must discharge the burden of proving that an accident occurred, it is contained in the final paragraph of that opinion: "* * * There must be an accident to furnish the basis of any such claim, that is to say, something sudden, undesigned or unexpected and that accident must either cause or aggravate the *disease* which is the cause of the disability." (Emphasis supplied.) We do not believe the holding of that case is so limiting that only positive medical proof that a preexisting *disease* has been aggravated or a particular organ or organs of the body have been changed will sustain causation between accident and disability.

■■ In a case such as the present one, where there is proof of an accident and of a following disability without any intervening cause, it is presumed that the accident caused the disability. The criterion for causal connection between the accident and the disability is: Has the accident changed the plaintiff's condition so as to render him disabled and unfit for his former employment?

After the first accident which caused coronary insufficiency or "nodal tachycardia" the plaintiff was unable to work for a little over two months. Then with specific medical approval he returned to his job and actually performed the required hard physical labor for nine months, apparently asymptomatic of either disease or disability. All medical authority would now refuse to allow the plaintiff to return to work following, and because of, the second episode of tachycardia or angina pectoris. Not only do we presume but we must deduce that the second episode produced some change in the body of the plaintiff.

Medical experts are unable to determine or state the cause, the time of onset, the rate of or reason for acceleration or regression of arteriosclerosis or coronary

sclerosis. A plaintiff cannot be required to submit more proof than is here offered that he has suffered disability by reason of a causally connected accident when any additional proof must come from a science whose practitioners admittedly lack complete and exact knowledge of many aspects of the disabling disease and whose views are often divergent and vacillating.

■ Seals v. Potlatch Forests, Inc., supra, narrowly defined and overnicely refined the issue before the court. The legal criterion in compensation cases involving heart disease should be whether the accident caused a change in the employee's physical condition which is disabling, and not whether the accident changed the diseased organ of the employee. The residual condition from an accidental injury which *substantially* increases the possibility of recurrence of a disabling or death-dealing episode is legally disabling and is compensable under our Workmen's Compensation law.

■ Before this accident the plaintiff, though suffering from a cardiac or cardiovascular disease, exhibited no disabling symptoms of the disease, and adequately met the extreme physical demands of his employment. He was working with medical approval and with his employer's full knowledge of his existing dormant disease. He has established an accident and his inability to return to work. Medical opinion recognizes that an accident (exertion) caused some kind of injury, that the plaintiff is unable to return to work because of disability, and that the accident manifested the disability. We must therefore conclude that the accident has caused the termination of employment because of disability.

We have said repeatedly in workmen's compensation cases that it matters not that the accident could have occurred at another place and at another time or even at any time. We have said repeatedly that it is immaterial that the disability could have been brought on by causes other than trauma, if in fact trauma on the job which meets the standard of "accidental injury" within the Workmen's Compensation Act is a disabling factor.

We conclude that the plaintiff has established the causal connection between the accident and the disability. He has persuaded us that but for the accident of June 1, 1965, he would not have the disability claimed. Had he died from that accident, all would admit that his death was compensable. We do not require his life or a degree of proof impossible to produce in the inexact state of medical knowledge.

We are concerned with the whole man and with the effect an accident in the course of employment has upon his ability to earn a living by doing work of a similar

nature. The courts should not offer to an accidentally injured employee the alternatives of either returning to work at unreasonable, even unconscionable risk or becoming dependent upon public support. Workmen's compensation is a creation of the Legislature for the very purpose of localizing the economic responsibility in such a situation. Seals v. Potlatch Forests, Inc., supra, is specifically overruled.

The judgment of the Court of Appeal is reversed, and the judgment of the trial court is reinstated. All costs are to be paid by the defendant. The right to apply for rehearing is provided for in Rule XI, Section 3, of the Rules of this court.