DOMENGEAUX, Judge.
This is a suit for workmen’s compensation benefits wherein plaintiff alleges her total and permanent disability as the result of a cardiovascular accident. The district court rejected her demands and she appeals.
The evidence shows that plaintiff had been employed by defendant for some sixteen years as a bag machine operator. It was her job to stand beside a paper bag making machine and bundle the bags as the machine produced them.
On April 15, 1969, plaintiff reported for work at approximately 11:00 P.M. and was to have worked until 7:00 A.M. of the following day. Toward the end of her shift she was operating a machine to which she was not accustomed, and which produced small bags numbering 500 to a bundle. *309 The bundles, which weighed approximately three pounds each, were stacked ten high and three across on a table beside the machine. Ordinarily these bundles are removed by attendants called rn.ach.ine tenders, but on the morning in question plaintiff’s efforts to summon such a tender proved futile. Accordingly, as the bags piled up on her table, she pushed them to make room for more. Pushing the ninety or so pounds of bags required considerable exertion on plaintiff’s part, and caused her to feel what she described as a stabbing pain in her chest.
The pain was so intense that plaintiff felt that she was about to faint, so she turned off her machine and sat on her work table. That is the last thing that she remembered occurring prior to her awakening in a hospital. She has not worked since that date and states that even slight exertion around the house produces severe chest pain.
Defendant called two fellow employees of plaintiff’s who were witnesses to the incident. They testified that they found plaintiff sitting on her table crying and that she was carried to the plant’s first aid room and from there taken to the hospital by ambulance. Although she appeared to be conscious, she was not talking and she seemed to be having trouble breathing. At 8:45 A.M., April 16, 1969, she was admitted to Savoy Memorial Hospital, in Ma-mou, Louisiana, with a diagnosis of possible myocardial infarction.
Her treating physician was Dr. Frank P. Savoy, Jr., although she was admitted by another physician on the former’s behalf. Dr. Savoy had also treated plaintiff for a previous heart ailment at which time she had almost certainly suffered a myocardial infarction. On the former occasion she was admitted to the hospital on August 18, 1968, and released on September 6, 1968, with Dr. Savoy concluding that she had an “acute myocardial infarct”. The doctor advised her not to return to work as she was suffering from arteriosclerotic heart disease.
Nevertheless, plaintiff did return to her former employment, after having received the approval of the company physician, Dr. Archie B. Osborn, in October, 1968. She was put to work on machines which she, at least, considered to be lighter duty than those which she had previously operated. She was able to carry out her duties until the morning of April 16, 1969, at which time, as aforesaid, she was operating an unfamiliar and more difficult machine, and while doing so suffered the accident herein sued for.
Following her admission to the hospital on April 16, 1969, she was given two electrocardiograms and enzyme tests, all of which failed to show any abnormality. The following day she was much improved, and she was released with a diagnosis of angina pectoris. Dr. Savoy again told plaintiff not to return to work, more emphatically this time, stating that she should not work if she wanted to keep living. Although Dr. Savoy conceded that attacks of angina pectoris could occur at any time, he was of the opinion that working would pre-dispose plaintiff to having them. It was his further opinion that the straining episode described by plaintiff could have caused the attack of angina pectoris, but he could not definitely state that it had.
Dr. Roderick Perron, who had treated •plaintiff for a cardiac difficulty a few days prior to the myocardial infarction of August, 1968, was skeptical that she had ever had an infarction at all. He too opined, however, that if she did suffer a myocardial infarction she would be more predisposed to further injury in the future, that working would increase the likelihood of angina pectoris pains as such are produced by insufficient blood flow to the heart, and that when angina pectoris appears she should cease working. In that connection he admitted that Dr. Savoy was in a better position to determine whether *310 plaintiff had a myocardial infarction than was he.
The electrocardiograms performed on plaintiff were sent to Dr. John R. Seabury of the Louisiana State University Medical School for his interpretation. Dr. Seabu-ry, an internist, concluded from the electrocardiograms that plaintiff had in all probability suffered a myocardial infarction in August of 1968 and that because of that, she was more susceptible to a heart attack on April 16, 1969, than the average person would be. She did not, however, have another infarction on that date insofar as the doctor could tell from reading the electrocardiograms. When presented with a hypothetical question asking that he assume plaintiff to have had angina pecto-ris and fainted while performing the unusually strenuous activity of pushing the stacked bags, he stated that it would be fair to say that the pushing of the bags probably precipitated the attack of angina pectoris. Dr. Seabury would not advise plaintiff to refrain from any type of work, but considering his personal inspection of the electrocardiograms and assuming the occurrence of the incident said by her to have taken place on April 16, 1969, he would advise her not to continue doing the same type of work.
Dr. Archie B. Osborn was the physician primarily employed by defendant to examine applicants for employment, treat emergency cases, etc., and was paid a retainer by defendant for such services. He came into contact with plaintiff on July 16, 1968, at which time he thought she had suffered a heart attack and, at her request, he sent her to Dr. Savoy. On October 28, 1968, he again saw plaintiff and examined her with the object of determining her fitness to return to work. As aforesaid, he gave her his approval and she resumed her position in defendant’s employ. Dr. Osborn next saw plaintiff on April 23, 1969, following the difficulty forming the basis of this suit. On that occasion he refused to permit her return to work as to have allowed her to work would, in his opinion, be a risk to the company.
On behalf of defendant, and at its request, plaintiff was examined on March 13, 1970, by Dr. George M. Anderson, an internist from Lake Charles, Louisiana. This physician testified that he found muscle tenderness which, to him, explained plaintiff’s chest pains. He was of the opinion that plaintiff had heart disease in 1968 but did not have a myocardial infarction even then. He attributed her difficulty of April, 1969, to myositis of the inter-costal muscles, pectoral muscle and scalen-us muscle on the left. Since he thought her present difficulty to be due strictly to muscular skeletal pain, he considered her fit to return to her normal employment.
The evidence, then, establishes to our satisfaction that plaintiff suffered a myocardial infarction in August, 1968, and subsequently returned to her employment. On April 16, 1969, while in the course and scope of her employment, she exerted herself to an unusual degree and immediately experienced a pain in her chest of sufficient strength to force the cessation of her labor. The pain was subsequently diagnosed by her treating physician as being angina pectoris and that diagnosis is seriously challenged by only one of the five physicians who testified, Dr. Anderson, a specialist who saw plaintiff but once, at defendant’s request. Dr. Anderson is likewise the only one of the five medical experts who would advise plaintiff to return to her former employment.
The only real question is whether the plaintiff’s pain was the result of her exertion. We think that it was.
While none of the medical experts would definitely state that the exertion caused the pain, all agreed that it could have caused it, and none said that it did not cause it. The tenor of the entire medical testimony is to the effect that angina pectoris being the result of insufficient blood flow to the heart, it is more likely to appear in times of stress, exertion, etc., when the heart *311 needs more blood. Further, Dr. Seabury gave his opinion, considering the facts of the case, that the pushing of the bags caused the attack of angina pectoris. This medical testimony, when considered with the lay evidence, in our opinion constitutes sufficient proof of the causál connection between plaintiff’s unaccustomed exertion and the attack of angina pectoris.
Considering the foregoing findings of fact, we think this case to be controlled by the recent Louisiana Supreme Court case of Bertrand v. Coal Operators Casualty Company, 253 La. 1115, 221 So.2d 816. In Bertrand the plaintiff was a manual laborer who experienced cardiac difficulties while at work which one physician thought to be nodal tachycardia and two others thought to be angina pectoris due to a coronary insufficiency, or even a slight occlusion, in either case resulting from arteriosclerosis. Bertrand refrained from working for a time and then returned to his usual employment. He worked for some eight and one-half months and then, eleven months after his previous difficulty, he suffered a second attack. The physicians then considered him totally and permanently disabled as it was their opinion that further efforts at working would be likely to produce new attacks of tachycardia or angina pectoris. The Supreme Court, after first rendering an opinion rejecting the plaintiff’s demands, reversed itself and awarded plaintiff benefits for total and permanent disability. In doing so it used the following language:
Medical experts are unable to determine or state the cause, the time of onset, the rate of or reason for acceleration or regression of arteriosclerosis or coronary sclerosis. A plaintiff cannot be required to submit more proof than is here offered that he has suffered disability by reason of a causally connected accident when any additional proof must come from a science whose practitioners admittedly lack complete and exact knowledge of many aspects of the disabling disease and whose views are often divergent and vacillating.
Seals v. Potlatch Forests, Inc., supra [151 So.2d 587 (La.App. 3rd Cir. 1963)], narrowly defined and overnicely refined the issue before the court. The legal criterion in compensation cases involving heart disease should be whether the accident caused a change in the employee’s physical condition which is disabling, and not whether the accident changed the diseased organ of the employee. The residual condition from an accidental injury which stibstantially increases the possibility of recurrence of a disabling or death-dealing episode is legally disabling and is compensable under our Workmen’s Compensation law.
Before the accident the plaintiff, though suffering from a cardiac or cardiovascular disease, exhibited no disabling symptoms of the disease, and adequately met the extreme physical demands of his employment. He was working with medical approval and with his employer’s full knowledge of his existing dormant disease. He has established an accident and his inability to return to work. Medical opinion recognizes that an accident (exertion) caused some kind of injury, that the plaintiff is unable to return to work because of disability, and that the accident manifested the disability. We must therefore conclude that the accident has caused the termination of employment because of disability.
We have said repeatedly in workmen’s compensation cases that it matters not that the accident could have occurred at another place and at another time or even at any time. We have said repeatedly that it is immaterial that the disability could have been brought on by causes other than trauma, if in fact trauma on the job which meets the standard of “accidental injury” within the Workmen’s Compensation Act is a disabling factor.
*312 We conclude that the plaintiff has established the causal connection between the accident and the disability. He has persuaded us that but for the accident of June 1, 1965, he would not have the disability claimed. Had he died from that accident, all would admit that his death was compensable. We do not require his life or a degree of proof impossible to produce in the inexact state of medical knowledge.
We are concerned with the whole man and with the effect an accident in the course of employment has upon his ability to earn a living by doing work of a similar nature. The courts should not offer to an accidentally injured employee the alternatives of either returning to work at unreasonable, even unconscionable risk or becoming dependent upon public support. Workmen’s compensation is a creation of the Legislature for the very purpose of localizing the economic responsibility in such a situation. Seals v. Potlatch Forests, Inc., supra, is specifically overruled.
Those thoughts bear equal applicability to the case at bar, as the facts of the two cases are almost parallel. We must therefore conclude that the plaintiff has sufficiently proved her total and permanent disability resulting from an accident that occurred in the course and scope of her employment. She is accordingly entitled to the benefits provided by law and the trial judge erred in rejecting her demands therefor.
For the above and foregoing reasons the judgment of the district court is reversed and it is now ordered, adjudged, and decreed that there be judgment herein in favor of plaintiff, Eva Ella Dupre, and against defendant, Calcasieu Southern Maid Paper Company, for workmen’s compensation benefits for total permanent disability to be paid at the rate of $45.00 per week for a period not to exceed 500 weeks, beginning on April 16, 1969, for medical expenses not to exceed the sum of $2,500.-00, the maximum amount prayed for. Defendant, Calcasieu Southern Maid Paper Company, is to bear all costs of these proceedings both in this and in the district court.
Reversed and rendered.