PRICE, Judge.
This is an appeal from the judgment of the trial court rejecting plaintiff’s demands against the City of Shreveport and its insurer, Aetna Life and Casualty Company, for benefits under the workmen’s compensation statute for a total and permanent disability.
Plaintiff, C. C. Prim, was working as a laborer for the City of Shreveport at the Cross Lake water plant. He contends on September 24, 1971, while helping to dock a small boat, he slipped on a rock and hurt his left leg. He administered first aid to his leg on the job and continued to work, although having pain in his leg. On Octo *594 ber 5, 1971, while participating in the cleaning of filters, he contends the leg hurt to such an extent he asked the supervisor to take him to the doctor. He was taken to the office of Drs. Eddy and Garrett and was seen by Dr. James H. Eddy, who was not called to testify at the trial. On the next day plaintiff saw Dr. Broox Garrett, a partner with Dr. Eddy, who diagnosed plaintiff had suffered a stroke and had some paralysis in his left leg and a drawing of his mouth on the left side. Dr. Garrett testified plaintiff’s stroke was a result of either a blood clot or a rupture of a blood vessel caused by his abnormally high blood pressure. Dr. Garrett found his blood pressure on October 6th to be 258/ISO.
Dr. Garrett was the only medical witness called by plaintiff to testify on his behalf. This witness was of the opinion there was no connection whatsoever between the incident plaintiff alleges happened on September 25th, when he injured his left leg in the fall, and his cerebral vascular accident. Dr. Garrett explained that the injury to the lower left leg could not have passed a blood clot to the brain as any such clot would have gone into the lungs and caused a blockage in this area. He was positive in his testimony that trauma would not have brought on the stroke.
During the course of the trial plaintiff’s attorney adopted the theory that plaintiff’s stroke was caused by the strenuous duties of his employment, and although it is impossible to show when the stroke occurred, he is nevertheless entitled to compensation benefits. In support of this position plaintiff cites Bertrand v. Coal Operators Casualty Company, 253 La. 1115, 221 So.2d 816 (1969); Weber v. McLean Trucking Company, Inc., 265 So.2d 628 (La.App. 3rd Cir. 1972); and Reed v, Mullin Wood Co., Inc., 274 So.2d 845 (La.App. 2d Cir. 1973).
In all of the cited cases the court found the evidence presented by the plaintiff to be sufficient to establish the burden required of him to show a causal relation between the work being performed by him or the accidental injury sustained in the course of his employment and the physical defect causing his disability.
None of these cases have relaxed the burden required of a compensation claimant to prove his case to a legal certainty by a preponderance of the evidence.
Dr. Garrett testified concerning the cause of plaintiff’s stroke as follows:
“Q. Now, the — what would have caused or brought about the vascular accident which you described that caused the paralysis ?
“A. I think the obvious thing in this type of case is hypertension, because we have a long history of hypertension on him, dating back to 9-5-70, when he reported to the emergency room of 'the Schumpert Hospital at 4:40 P.M., with the complaint of pain in his head, pain in his left shoulder, pain in his left arm and dizziness.
“Q. Now, where was that, Doctor ?
“A. That was at the emergency room of the Schumpert Hospital.
“Q. You saw him then ?
“A. No, my partner saw him then.”
sje ‡ s}c
“Q. And hypertension, would it be related to his high blood pressure? You said his reading, I believe, was 258/150 (sic), would you consider that abnormally high blood pressure for a man his age ?
“A. You said I would consider it?
“Q. Would you—
“A. That’s high blood pressure for anybody, but his .blood pressure was also high when he was seen at the emergency room, this time that I’m just talking about.”
* * * * * *
*595 “Q. Now, would his hypertension that you were treating, have any connection whatsoever with the type of work he was doing? Do you know what type of work he was doing ?
“A. No, sir.
“Q. Never discussed that with him?
“A. No.
“Q. Would his hypertension have any effect on — in other words, what I’m asking is, would it have any connection with the type of work that he was doing out there with the City? He was doing — he was a maintenance employee at the pumping station, doing route work, cleaning those vats ?
“A. I can’t see how — no, sir, in my opinion that would not have any effect one way or the other on hypertension.”
Although under cross-examination Dr. Garrett stated a person with abnormally high blood pressure should not be exerting themselves by heavy labor, he could not say that plaintiff’s work was a precipitating factor of the cerebral vascular accident.
As we understand Dr. Garrett’s testimony, the abnormally high blood pressure in plaintiff’s body caused the rupture of the blood vessel. How long or when his pressure attained this level it is impossible to predict, except it is known it had previously reached it in September of 1970 when he was treated by Dr. Eddy. We also understand hypertension is the underlying cause of the abnormal blood pressure. Further, we conclude from his testimony that his employment had nothing whatsoever to do with the stroke.
Under the facts and circumstances presented in this case, we do not find the trial judge has committed manifest error in finding the plaintiff has not proven his disability has resulted from any accidental injury in the course of his employment.
The judgment appealed from is affirmed.
WILLIAMS, J., dissents with written reasons.