DOMENGEAUX, Judge,
dissenting.
My esteemed colleagues of the majority have made a skillful judicial end-run which completely side steps and evades the blocks and tackles of the Bertrand case. I suggest that the only way that this reversal will stand is if the Louisiana Supreme Court overrules Bertrand.
The trial judge, without giving reasons therefor, concluded that plaintiff “has made out his case on the question of disability and causal connection with the employment and should be awarded total and permanent disability.”
On this appeal, two issues confront us: (1) Whether there is any causal connection between the accident of December 15, 1978, and the disability of which plaintiff complains; (2) Should plaintiff be awarded penalties and attorney’s fees?
CAUSALITY
Prior to plaintiff’s accident of December 15, 1978, he had never had chest pains, nor fainted, and as far as he or anyone else was concerned, was in good health.[1]
All physicians in this case agree that plaintiff suffers from an aortic stenosis. Simply stated, that condition exists when a heart valve becomes stenosed or constricted. With this condition less blood can leave the heart. A person with such a condition could have problems such as passing out, suffering from shortness of breath, or chest pains. This aortic insufficiency means that the valve is distorted and some of the blood that does leave the heart flows back into the heart — an event which should not occur.
*549 All doctors agree that plaintiff was possessed of the aortic stenosis for many years prior to the accident of December 15, 1978. They also all agree that such a condition is usually congenital and that plaintiff’s condition was probably congenital. However, as all doctors state, an aortic stenosis can be caused from numerous other phenomena such as rheumatic fever or calcium in the aorta.
As an elementary proposition the doctors state that hard work or exertion cannot cause the condition of aortic stenosis; however, hard work or exertion can and does cause the onset of the symptoms of the disease, such as dizziness and fainting.
In this case, all physicians agree that the plaintiff is totally disabled. It is also agreed that the accident experienced by plaintiff on December 15, 1978, occurred while he was in the course and scope of his employment.
Plaintiff, since December 15, 1978, has been under numerous medications, including nitroglycerin for decreasing blood pressure, and he suffers frequently and spasmodically with chest pains. All of the doctors involved recommended that he remain quiet and engage in no exertion at all.[2] The medical evidence glaringly brings out the fact that once symptoms such as chest pains and syncope (fainting) develop on one possessed of aortic stenosis, such symptoms can be related to impending death. Once chest pains develop many such people die within two years, and when fainting develops many of them die within five years. Unquestionably, plaintiff cannot exert himself without endangering his life.
Plaintiff’s ease fits the rationale set out by the Louisiana Supreme Court in Bertrand v. Coal Operators Casualty Company, 253 La. 1115, 221 So.2d 816 (1969). The plaintiff in Bertrand was a 57 year old laborer, and while performing heavy work in the sun while on the job he became weak, dizzy, and almost fainted. His condition was diagnosed as a nodal tacyhcardia, a conduction defect impairing the heart’s responses to impulses regulating its beat. Upon his doctor’s advice he rested for some months, went back to work, and while on the job blacked out, and fell to his knees, although he did not lose consciousness. Upon subsequent examination his doctor advised him to stop working because his heart condition was incompatible with his work. The doctor thought that continued work in the hot sun might bring about a full blown coronary and plaintiff’s death. The 'Supreme Court recognized a causal connection between the Bertrand plaintiff’s second accident and his disability and declared him to be totally and permanently disabled.
The Bertrand plaintiff had a pre-existing condition known as arteriosclerosis, which is a hardening and clogging of the arteries near the heart. The plaintiff in this case had a stenosed heart valve.
Doctor Helm, whose analogy of a ste-nosed heart valve and clogged arteries was agreed upon by Doctors Gremillion and Fontenot, testified as follows:
“Q. Now, doctor, do you think that in your opinion that this type of condition Mr. Guillory has, the manifestation of it, the hard work that requires the blood — the heart to work harder and to pump blood and not enough getting to the head, is that like a man who has clogged arteries that might be working hard one day and not enough blood getting through these arteries and then causing chest pains? Is this a correlation of symptoms?
A. Yes.. . .
Q. Is this a — how would you compare this?
A. The mechanics are the same.
Q. The problem is still you have the chest pains and dizziness because *550 not enough blood is getting where it’s suppose to be getting. Right?
A. Correct.
Q. Whether you have a defective valve or a clogged artery, you still have the problem of blood not flowing like it should be?
A. Those are very similar situations. That’s correct. TR (R.46-47)”
Arteriosclerosis or clogging of the arteries, is not caused by hard work, just as aortic stenosis is not caused by hard work. But when the accident (exertion) manifests the symptoms, i.e. chest pains, fainting, dizziness, passing out, then there is a causal connection.
Defendant suggests that inasmuch as the fainting experienced by the plaintiff herein did not make his aortic stenosis worse there is consequently no causal relationship between plaintiff’s condition and the accident. If plaintiff herein would have had arteriosclerosis, as the plaintiff in Bertrand had, the hard work or fainting would not have made the clogging of the arteries worse. The hard work would have only manifested the symptoms or showed him that he had this problem. In Bertrand the plaintiff therein had a disease which developed slowly over a period of years. It was a degenerative condition involving a hardening of the arteries which supply blood to the heart. The court in Bertrand stated:
“In a case such as the present one, where there is proof of an accident and of a following disability without any intervening cause, it is presumed that the accident caused the disability. The criterion for causal connection between the accident and the disability is: Has the accident changed the plaintiff's condition so as to render him disabled and unfit for his former employment?
After the first accident which caused coronary insufficiency or ‘nodal tachycardia’ the plaintiff was unable to work for a little over two months. Then with specific medical approval he returned to his job and actually performed the required hard physical labor for nine months, apparently asymptomatic of either disease or disability. All medical authority would now refuse to allow the plaintiff to return to work following, and because of, the second episode of tachycardia or angina pectoris. Not only do we presume but we must deduce that the second episode produced some change in the body of the plaintiff.
Medical experts are unable to determine or state the cause, the time of onset, the rate of or reason for acceleration or regression of arteriosclerosis or coronary sclerosis. A plaintiff cannot be required to submit more proof than is here offered that he has suffered disability by reason of a causally connected accident when any additional proof must come from a science whose practitioners admittedly lack complete and exact knowledge of many aspects of the disabling disease and whose views are often divergent and vacillating.
Seals v. Potlatch Forests, Inc., supra [151 So.2d 587 (La.App.)] narrowly defined and overnicely refined the issue before the court. The legal criterion in compensation cases involving heart disease should be whether the accident caused a change in the employee's physical condition which is disabling, and not whether the accident changed the diseased organ of the employee. The residual condition from an accidental injury which substantially increases the possibility of recurrence of a disabling or death-dealing episode is legally disabling and is compensable under our Workmen’s Compensation Law.
Before this accident the plaintiff, though suffering from a cardiac or cardiovascular disease, exhibited no disabling symptoms of the disease, and adequately met the extreme physical demands of his employment. He was working with medical approval and with his employer’s full knowledge of his existing dormant disease. He has established an accident and his inability to return to work. Medical opinion recognizes that an accident (exertion) caused some kind of injury, that the plaintiff is unable to return to work because of disability, and that the accident manifested the disabili *551 ty. We must therefore conclude that the accident has caused the termination of employment because of disability.” (Emphasis added).
By using specific responses from Doctor helm and the other two physicians to the effect that the “aortic stenosis” itself would not have been caused by plaintiff’s exertion in this case, the majority opinion attempts to show that the defendants have successfully rebutted the presumption that the accident herein caused the disability. The majority misses the point. The overall testimony of Doctor Helm and the other physicians show unquestionably that the accident involved in this case changed the plaintiff’s physical condition, consequently causing him to become permanently disabled. The following responses of Doctor Helm cannot be overlooked; they speak for themselves; the accident in this case did not change the stenosis (which no one claims), but changed plaintiff’s symptomatology and worsened his condition:
“Q. Alright. Well, is there a change — if he is not having heart pain and he obviously wasn’t if he had been working regularly, you know, like the history does show and prove, then that means he must have been getting enough blood to the heart as compared to now where he is having this heart pain and he must not be getting enough blood to the heart. Would that not be a change?
A. Well, it’s a change. Yes, it’s a change. He has — I think his symptoms have markedly increased and there has been a change in his symptoms.
Q. Since the accident on December 15th?
A. There is a change in his symptoma-tology and he has worsened since December 15th.”
Plaintiff here meets all of the requirements set out by the Supreme Court in Bertrand. He was able to and did perform strenuous work for the past 10 to 13 years. He was in good health the day before the morning of the accident. Since the accident he is totally and permanently disabled; in fact, any exertion at all may result in his death. The accident did not change plaintiff’s aortic stenosis, but it did change his physical condition which renders him disabled. His residual condition from the accident has substantially increased the possibility of a recurrence of a death-dealing episode, and consequently he is entitled to compensation.[3] Finally, defendants have completely failed to overcome or rebut any presumptions required in Haughton and Rowland.
I would conclude that the trial judge was correct in awarding plaintiff total and permanent disability benefits.
PENALTIES AND ATTORNEY’S FEES
The trial judge did not pass upon plaintiff’s claim for penalties and attorney’s fees. I conclude that these sanctions should be applied.
The defendant-insurer paid the bulk of plaintiff’s medical bills, but denied its obligation to plaintiff for compensation benefits. (The record does not disclose why one was paid and not the other.) Appellant contends that there was no causal connection between the accident of December 15, 1978, and plaintiff’s subsequent and continuing disability. As shown in the main body of this dissenting opinion, I disagree. This case fits the Bertrand case like a glove. Defendant-insurer in this case is presumed to have known the holding in the Bertrand case and under the holding of that case, there was not a serious issue as to a com-pensable accident in the case at hand. The *552 purpose of the penalty provision of the workmen’s compensation statute is to discourage an attitude of indifference to the injured employee’s condition. Moreau v. Houston General Insurance Company, 386 So.2d 151 (La.App. 3rd Cir.1980). I would conclude that the insurer’s failure to pay plaintiff compensation under the circumstances herein was arbitrary, capricious, and without probable cause, and accordingly, would proceed under the provisions of La. R.S. 22:658 to award attorney fees and penalties.
For all of the above reasons I disagree with this reversal by the majority, and respectfully dissent therefrom.

. Doctor Helm makes an inconclusive and unclear reference to a heart murmur which plaintiff told him was discovered when he was examined for the Army. The record otherwise does not show when this was. Obviously it was many years before the accident of December 15, 1978.

. Doctor Helm additionally feels that depending upon the results of any future catheterization on plaintiff, he could be a subject for heart surgery which, depending upon the circumstances, could improve plaintiff’s condition and possibly allow him to perform some limited non-laborious work.

. Appellant suggests that plaintiff herein is not entitled to recover based on the case of Cormier v. Aetna Insurance Company, 368 So.2d 461 (La.App. 3rd Cir. 1979). Cormier is readily distinguishable. Therein, the plaintiff, while on the job, sneezed and thereafter experienced chest pains, numbness and dizziness. His condition was subsequently diagnosed as an atrial septial defect, otherwise described as a hole in the wall of the heart. The medical evidence was to the effect that there was no causal relationship between Cormier’s job and his heart condition. It was the sneezing which caused him to experience the chest pains, numbness and dizziness and not the exertion and stress from work.