250 So.2d 99 (1971)
Geneva BROWN, Widow of Robert Brown
v.
KAISER ALUMINUM & CHEMICAL CORPORATION.
No. 4384.
Court of Appeal of Louisiana, Fourth Circuit.
June 7, 1971.
Rehearing Denied July 15, 1971.
*100 Garvey, Salvaggio & Prendergast, John A. Salvaggio, New Orleans, for plaintiff-appellant.
Lemle, Kelleher, Kohlmeyer, Matthews & Schumacher, Paul B. Deal, New Orleans, for defendant-appellee.
Before LEMMON, TAYLOR and STOULIG, JJ.
STOULIG, Judge.
This is an action for workmen's compensation benefits filed by the surviving widow of a deceased employee of the defendant, alleging that her husband died of a heart attack occasioned, aggravated, or accelerated during the course and scope of his employment. Complainant also seeks funeral expenses, statutory penalties and attorney's fees.
Prior to the trial of this matter on its merits, the petition was amended to include the natural tutrix of the two minor grandchildren of the decedent as additional parties plaintiffs for their allocation as dependents under LSA-R.S. 23:1232.
In construing the rights of the various classes of dependents under section 1232, the Court of Appeal, Third Circuit, in the case of Freeman v. New Amsterdam Casualty Company, 199 So.2d 356, 359 (1967), reaffirmed the jurisprudence enunciated by the Supreme Court by holding:
"Where there are several dependents, some of whom belong to a class which is preferred over others, such as parents over brothers and sisters, the amount due each will be paid until the maximum is exhausted, payment being made first to those of the preferred class. The payment of compensation to those of a preferred class, however, does not foreclose payment also to those of a deferred class, so long as the maximum rate of compensation remains unabsorbed. McDonald v. Louisiana, Arkansas & Texas Transp. Co., 28 So.2d 502 (La.App.2d Cir. 1946, cert. denied); Caddo Contracting Company v. Johnson, 222 La. 796, 64 So.2d 177 (1953); Flanagan v. A L & W Moore Trucking Contractors, 100 So.2d 289 (La. App.2d Cir. 1958); and Venable v. Liberty Mutual Insurance Company, 142 So. 2d 639 (La.App.3d Cir. 1962)."
It is admitted that the surviving widow's allotment of 32½% of the decedent's wages amounts to $38.00 per week, which exceeds the maximum weekly compensation allowance of $35.00. The surviving widow has a perferred status, which primes the right of the grandchildren, and the satisfaction of her claim exhausts all of the available compensation, thereby foreclosing any issue of payment to the grandchildren. Therefore, the attacks leveled against the supplemental petition, embodying the rights of the grandchildren, are purely academic.
The decedent, Robert Brown, an obese 54-year-old male, was employed as a "potroom service laborer" by the defendant, Kaiser Aluminum & Chemical Corporation. A potroom contains 144 pots, each measuring 20 feet by 10 feet in which aluminum is processed. Mr. Brown's duties were to assist a forklift operator in the replacement of steel floor plates, concrete blocks, and air grates. Air grates are constructed of 20 pieces of grating measuring 3 feet in length by 3 inches square, each weighing approximately 20 pounds. These are ventilator grills covering the fresh air tunnel located between the rows of pots. On the date of the fatality the evidence preponderates in favor of the conclusion that Brown's activities were confined to replacing damaged grates.
On December 6, 1965, the deceased suffered a fatal heart attack while he was in his employer's plant and during the course of his regular work shift. A "recent myocardial infarction" was assigned by the St. Bernard Parish Coroner's Office as the immediate cause of death. An autopsy, made at the request of the coroner's office, revealed the deceased had a severe coronary atherosclerosis; occlusion of the right coronary artery; acute posterior myocardial *101 infarction; old lateral myocardial infarction; and pulmonary congestion and edema. In the opinion of the examining pathologist, the onset of the acute posterior infarction occurred from 6 to 8 hours before death. It was attributed to severe coronary arteriosclerosis which restricted the flow of blood to the heart, thereby depriving it of the oxygen required to function, resulting in the myocardial infarct (death of a heart muscle). The intervention of pulmonary congestion and edema, indicative of cardiac failure, preceded the occurrence of ventricular fibrillation, which is a common mode of death in myocardial infarction.
It is undisputed that the defendant was engaged in a hazardous business within the scope of the Workmen's Compensation Statute and that the customary duties of the deceased were likewise hazardous. It is further undisputed that the complainant, Geneva Brown, was the legal wife of the deceased, living and residing with him at the time of his death.
It is admitted that the death of Robert Brown occurred "in the course of" his employment, the same having occurred while on the employer's premises and during his normal work day; however, the issue presented by this appeal is whether it "arose out of" his employment with the defendant, that is, whether the decedent's employment activities, on the date of his death, provoked, aggravated or accelerated the fatal heart attack.
Although the compensation act is sui generis in nature, our settled law is that the plaintiff must establish his claim to a legal certainty and by a reasonable preponderance of evidence. Williams v. New Orleans Paper Box Company, 185 So.2d 109 (La.App. 4th Cir. 1966).
The liberality of statutory interpretation in favor of the employee cannot be offered to relieve claimant of the responsibility of bearing the burden of proof necessary to establish the causal connection between the activities of employment and the death resulting from his heart condition. The connexity between the performance of his work and the ensuing death must be established as one of reasonable probability to the same degree required in any other civil case.
Under LSA-R.S. 23:1021 an "accident" is defined for purposes of the compensation statute as "an unexpected or unforeseen event happening suddenly or violently, with or without human fault and producing at the time objective symptoms of an injury."
In applying the statutory definition of accident to compensation claims arising from vascular diseases, the pathological as opposed to the factual concept of the term has been utilized. No actual physical traumatic or bodily injury produced by external violence or other extrinsic agent need be established. This view has been emphatically reaffirmed by the Supreme Court in the case of Danziger v. Employers Mutual Liability Insurance Company of Wisconsin, 245 La. 33, 156 So.2d 468, 473 (1963), wherein it stated:
"The jurisprudence applicable to disability from heart ailments and other vascular diseases constitutes an extension of the provisions of the Act to cover illness or death from `disease' so long as the workman is engaged in physical labor even though there is factually and, in reality, no `accident' or traumatic `injury' to the structure of the body as those terms are defined by paragraphs (1) and (7) of R.S. 23:1021, which we have quoted above. This extension of coverage has been accomplished by the courts under the guise of a liberal interpretation, to which the provisions of the statute are to be accorded, and the cases are so numerous and consistent on the subject that we now must regard the validity of the holdings to be a closed question."
It is sufficient to constitute a compensable accident involving heart diseases *102 within the meaning of the Workmen's Compensation Statutes when the work effort and the exertion of the employee in discharging his customary duties causes the diseased organ to collapse or its function to become so impaired as to result in disability or death. This conclusion is expressed in the case of Prater v. Liberty Mutual Insurance Company, 182 So.2d 805, 807 (La.App.3d Cir. 1966):
"The jurisprudence is likewise established that where physical effort, although nothing more than usual and customary in the employment, causes, contributes to or accelerates death or disability from a heart attack, the requirements of a compensable accident are met. Hemphill v. Tremont Lumber Co., 209 La. 885, 25 So.2d 625 (1946); Seals v. Potlatch Forest, Inc. [La.App., 151 So. 2d 587], supra; Roberson v. Michigan Mutual Liability Co., 90 So.2d 465 (La. App. 2nd Cir. 1956); Franklin v. Old Colony Insurance Co., 150 So.2d 892 (La. App. 4th Cir. 1963)."
The adjudication of plaintiff's right is dependent upon the existence of a causal connexity between the decedent's employment activities and his resulting death from a heart attack. To determine this issue of fact, the court must be primarily guided by the testimony of the medical experts. Excluding the company doctor and the parish coroner, both of whom had only an incidental cursory contact with the decedent, the remaining medical witnesses were cardiologists and pathologists presented by each of the litigants.
Basically, all of these experts are in agreement as to the objective findings, but disagree as to medical significance or interpretation. It is undisputed that the deceased suffered a small myocardial infarction measuring 1¾ inches in diameter near the apex of the heart. The death of this part of the heart muscle was caused by a lack of oxygen which is normally supplied by the blood. The flow of blood to the heart was seriously restricted by a severe coronary arteriosclerosis (hardening of the coronary arteries), a preexisting chronic progressive condition. Accordingly, the arteriosclerosis was the primary cause of the infarct which lead to Brown's death.
The conflicting viewpoints of the medical witnesses may be summarized as follows: Plaintiff's expert witness contends that the decedent's activities of replacing the ventilator grill, involving stooping and lifting in a hot environment created by heat from the nearby aluminum pots, aggravated and accelerated the effect of the preexisting "silent" myocardial infarct, which, coupled with congestive heart failure, produced the ventricular fibrillation that precipitously quickened the employee's death.
As opposed to the foregoing, the defendant maintains that the decedent's work effort was not instrumental in causing his death. It is submitted that the ingestion of his lunch caused an oxygen imbalance which his heart could not overcome and that the stress and strain of its attempt to do so resulted in ventricular fibrillation producing death.
The uncontroverted chronological sequence of the decedent's activities on the day of his death were as follows:
8:30 a. m.  Work shift starts
11:45 a. m.  Break for lunch
11:50 a. m.  Emergency orderlunch interrupted
12:20 p. m.  Job completedlunch period resumed
12:30 p. m.  Back to shack for assignment of work
12:45 p. m.  Complaint in potroom
1:15 p. m.  Examined in nurse's station
2:09 p. m.  Pronounced dead.
It should be noted that the emergency work order which interrupted the lunch period was not in the strictest sense a true emergency. It involved the replacing of a burned *103 ventilator grill which required immediate attention but presented no danger to personnel or critical failure of operation. As no urgency of crisis existed, the repairs were made in a routine manner free of any unusual effort.
From the respective contentions of the parties, it can be assumed, as a fact, that the employee's heart condition was aggravated and his death accelerated on the day in question (fatal day). The only dispute is the nature of the cause precipitating the aggravation or acceleration, with the plaintiff insisting it was work induced, and the defendant submitting it was attributable to the ingestion of food.
A careful consideration of the very detailed and somewhat voluminous medical testimony leads the court to conclude that it clearly preponderates in favor of the plaintiff's version of facts and circumstances surrounding her husband's death.
Such a conclusion is warranted from the undisputed evidence which established that he was engaged in his customary duties during the morning work hours. His lunch period was interrupted to replace a ventilator grill, necessitating this obese man, undergoing a "silent" heart attack, to stoop and handle objects weighing 20 pounds, while working in the immediate vicinity to a pot radiating heat. It was shortly after this activity that the decedent first experienced pain, which he thought to be indigestion. Death followed within an hour.
It should be borne in mind that the myocardial infarct is the result of a lack, or imbalance, of oxygen to the heart and that all of his activities, on the day of his death, were job related, creating additional demands upon an already damaged heart, incapable of supplying these needs. All of the doctors were of the opinion that physical exertion, particularly in a hot environment, is detrimental and has a tendency to aggravate an infarction, thereby leading to an earlier death. A myocardial infarct (the onset of which, in this case, occurred at least six to eight hours prior to death) is not necessarily fatal, particularly one of such small size as the decedent experienced. But decedent's work efforts were the direct opposite of the treatment he should have been receiving for this type of illness. The customary or accepted treatment is to administer maximum oxygen to sustain the area immediately surrounding the dead muscle to prevent it from spreading; complete immobilization of the patient in a quiet, cool, and comfortable environment to minimize the oxygen demands upon the heart made by exertion or excitement. Had Brown been aware of his attack and afforded this treatment, his chances for survival would have been good. However, the lack of complaint of pain until after the lunch period indicated that it was a "silent attack," one of which the victim had no knowledge.
The only basis for the defendant's position that the eating of lunch aggravated deceased's condition and accelerated his death was advanced by its cardiologist, Dr. Samuel Nadler. He assigned the ingestion of food as the precipitating factor because it was at this time, in the sequence of events, that he experienced pain, the first clinical evidence of a coronary difficulty, which he thought to be indigestion.
The court is of the opinion that all the medical testimony given clearly preponderates to the conclusion that this occurrence was a mere coincidence in the point of time. Though the ingestion of food causes a dilation of the blood vessels in the intestines and stomach, resulting in an increased demand for oxygen from the heart, it is difficult to accept that it is more demanding, in this respect, than that occasioned by his work effort immediately before completing his lunch period.
It may well be that the eating of his lunch was a contributing factor toward hastening death but this would not render ineffectual the aggravation caused by decedent's *104 employment activity in a warm environment. All that claimant is legally required to establish is that the decedent's customary and usual duties of employment directly contributed to the employee's demise, it being unnecessary that the injury be the result of unusual physical effort, or that it is the exclusive cause of the disability or death. Griffin v. Employers' Liability Insurance Company, 186 So.2d 349 (La.App. 4th Cir. 1966); Turner v. Howard Motors, Inc., 192 So.2d 205 (La.App. 4th Cir. 1966). It is of no legal significance that a preexisting heart condition, i. e., arteriosclerosis and/or myocardial infarction may also have played a role in the occurrence of death. Guerrera v. City of New Orleans, 212 So.2d 223 (La.App. 4th Cir. 1968); and Garvin v. City of New Orleans, 243 So.2d 347 (La.App. 4th Cir. 1971). Nor is Dr. Nadler's suggestion that the cause of Brown's death could have been a nonwork-related heart condition of coronary thrombosis (the contrary not having been expressly negated or mentioned in the autopsy report) of legal significance, since he admitted, as did all of the experts, that there was no pathological or clinical basis for such a conclusion. Such an inference, then, falls within the realm of a negative, speculative opinion.
Our Appellate Courts are cognizant of the difficulty in proving the causal connexity between the duties of employment and the resulting disability or death from vascular diseases. In Bertrand v. Coal Operators Casualty Company, 253 La. 1115, 221 So.2d 816, 828 (1969), it was noted:
"Medical experts are unable to determine or state the cause, the time of onset, the rate of or reason for acceleration or regression of arteriosclerosis or coronary sclerosis. A plaintiff cannot be required to submit more proof than is here offered that he has suffered disability by reason of a causally connected accident when any additional proof must come from a science whose practitioners admittedly lack complete and exact knowledge of many aspects of the disabling disease and whose views are often divergent and vacillating."
And, later referring to the fact that it is only necessary for the accidental injury to be a contributing cause to render the disability compensable, the court further stated, also at page 828:
"We have said repeatedly in workmen's compensation cases that it matters not that the accident could have occurred at another place and at another time or even at any time. We have said repeatedly that it is immaterial that the disability could have been brought on by causes other than trauma, if in fact trauma on the job which meets the standard of `accidental injury' within the Workmen's Compensation Act is a disabling factor."
Recently, this court, in Vicknair v. Avondale Shipyards, Inc., 220 So.2d 580 (La.App. 4th Cir. 1969), awarded dependent compensation benefits and funeral expenses to a surviving widow, in a factual situation astonishingly identical to the instant matter. In the Vicnair case, the employee also had a "silent" coronary and died during the course of his regular workday, while performing the customary duties of his employment; he too suffered a myocardial infarction, several hours prior to his death, which also resulted in pulmonary edema and congestion, causing heart failure; he too, in all probability, would have survived had he not worked; he too thought his heart pains were indigestion and was given Maalox; and he too died shortly after he visited the first aid station. Unquestionably, a like result should be attained in the matter before us.
This court is mindful that the trial judge is vested with much discretion in his determination of the facts, and his evaluation of the evidence and credibility of witnesses should be accorded great weight. In fact, the rationale of these concepts of appellate review are so well engrained in our jurisprudence *105 that no useful purpose would be served by reiterating them.
However, as the intermediate court we are charged with the obligation of reviewing both the law and the facts of the matters coming before us. LSA-Const. Art. 7, § 29; Barker v. Phoenix Insurance Company, La.App., 220 So.2d 720, writ refused, 254 La. 134, 222 So.2d 883 (1969); American Fidelity Fire Insurance Company v. Southern Railway Company, 180 So.2d 820 (La.App. 4th Cir. 1965). We cannot abdicate our responsibility of reviewing the evidence from which the trial judge has drawn his conclusions of fact under the guise of not disturbing his findings. We cannot accept his factual conclusions and adopt them as our own unless we confirm that the evidence warrants such findings. To do otherwise would be tantamount to relinquishing part of our appellate functions.
No evidence was introduced in support of the plaintiff's right to statutory penalties and attorney's fees for the defendant's alleged arbitrary failure to pay the prescribed compensation benefits to the surviving widow. For this reason, the court will consider this segment of the claim abandoned. The same finding and conclusion are applicable to the claim for funeral expenses.
Accordingly, the judgment of the lower court is reversed. It is now ordered that there be judgment in favor of the plaintiff, Geneva Brown, widow of Robert Brown, and against the defendant, Kaiser Aluminum & Chemical Corporation, awarding to the plaintiff dependency compensation benefits at the rate of $35.00 per week, beginning December 6, 1965, for a period not to exceed 400 weeks, with legal interest thereon on each past due installment from its due date until paid. All costs of the proceedings in the trial court and of his appeal are to be borne by the defendant-appellee.
Reversed and rendered.