BLANCHE, Judge.
Plaintiff, Mrs. Nina Mae Braud Fife, individually, and as natural tutrix of her minor children, Diane Marie Fife and Mary Ann Fife, filed suit to recover workmen’s compensation benefits for the death of her husband, Francis R. Fife, an employee of Kaiser Aluminum and Chemical Corporation for eighteen years. Mr. Fife suffered a coronary occlusion at approximately 7:30 AÍM. on April 10, 1969, shortly after arriving home from his work as a press operator. Although Mr. Fife had already completed his regular shift on April 9, 1969, beginning at 3:00 P.M., he volunteered to work the next shift due to the absence of a regular employee. After this, he secured a ride home with a security guard, arriving at around 6:15 A.M. and died shortly thereafter.
The trial judge took the case under advisement and subsequently rendered judgment in favor of defendant, dismissing plaintiff’s suit. From this judgment, plaintiff has appealed. We affirm.
Plaintiff-appellant’s principal assignment of error on appeal is the finding by the trial judge that there was no causal connection between the death of decedent and his employment. It is the plaintiff’s contention that the activity associated with decedent’s employment, together with an injury which he suffered to his leg while on the job and the extra strain of having worked a double shift immediately prior to his death either caused, contributed to or accelerated decedent’s death.
The decedent was employed by the defendant Kaiser Aluminum at its Baton Rouge plant as a press operator. According to the testimony of one of plaintiff’s witnesses, we observe that it is the duty of a press operator to oversee approximately eight vessels containing certain liquids which are being filtered in the defendant’s plant. When the filtering process has been completed, it is necessary to empty the vessels and clean them and put them back in operation. This is accomplished for the most part by mechanical means. Approximately half the working time of an operator is spent in an air conditioned control room where the men can sit and relax; and the other half is spent outside the control room emptying, washing down and checking the filter presses to ascertain that they are in proper operation. In connection with a press operator’s duty to wash down the presses, it is necessary that he climb a seven or eight foot ladder approximately six to eight times during the shift. We conclude that the work of a press op *353 erator is not very strenuous, as it was described by one of plaintiff’s witnesses as. being “easy” to work a double shift. This witness also testified that he had worked three double shifts in a row. The last shift which plaintiff worked, i. e., the 11:00 P.M. to 7:00 A.M. shift, was described by the foreman as being “light.” The decedent’s activities at work were of the nature hereinabove described. The foregoing considered, it is our opinion that the decedent’s work activities prior to his death were nothing more than usual and customary in his employment.
We will next consider decedent’s physical condition just prior to his death. The decedent had a previous history of heart disease, having suffered a heart attack (posterior myocardial infarction) in November of 1967. He was treated by Dr. Richard Selser and approximately three months after his attack he was released to go back to work. The nature of his work activity was restricted by the doctor in that he was instructed to avoid excessive physical exertion, running up and down steps and carrying or lifting excessively heavy loads, climbing ladders and working in excessive heat and cold.
After returning to work, decedent was also medically supervised by Dr. Charles McVea, who was in charge of the defendant’s medical services. Dr. McVea was aware of decedent’s condition and his work restrictions. On September 4, 1968, Dr. McVea allowed Mr. Fife to begin working two hours overtime a day or an extra eight-hour day per week. By October 9, 1968, he testified that decedent was adamant that he be returned to regular duty one year after his heart attack. Additionally, he stated that decedent visited him many times in the dispensary and insisted that he be permitted to work unrestricted overtime. Since decedent had had no trouble since his initial return to work in April, 1968, Dr. McVea finally removed the overtime restriction on February 26, 1969, and gave decedent permission to work one extra eight-hour overtime shift per week with the instruction that he was to avoid heavy lifting and could only climb one laddter flight. Approximately one and a half months later decedent died after working an eight-hour overtime shift.
The injury which plaintiff contends contributed to decedent’s death we find occurred on April 8, 1969, when plaintiff, in an attempt to unstick a valve with an iron pipe, slipped backwards on a catwalk and injured his shins. The extent of decedent’s injury and the date on which it occurred is disputed, plaintiff contending that it occurred on the shift prior to his death. There is no merit to the contention that the accident occurred on April 9, 1969, as the dispensary records clearly show that the accident occurred the day before. Plaintiff’s own witness, Mr. Pitre, a coworker, testified that one leg had a “little gash” on it, a brush burn. After the accident, decedent immediately reported to the dispensary where the plant nurse cleaned his leg and applied a tincture of Merthiolate, an ice pack and a band-aid. Further, because of decedent’s prior history of a heart attack, the nurse checked the decedent’s pulse and blood pressure, both of which turned out to be normal. Additionally, she called the Safety Supervisor, who ascertained that decedent was able to resume his duties. After returning from the dispensary, decedent performed the rest of his work without further complaint. The following day and prior to decedent’s reporting to work, he was required to return to the dispensary where he was again examined by the plant nurse. After ascertaining that decedent had no further complaints and was not in any discomfort, she changed the band-aid and decedent returned to work. He then completed a double shift without further complaint. Decedent’s wife testified that when he returned home that morning her husband was cheerful and in good spirit immediately prior to his death.
*354 The determination of plaintiff’s right to death benefits under the workmen’s compensation act is dependent upon the existence of a causal connection between the decedent’s employment activities and his resulting death from a heart attack. Brown v. Kaiser Aluminum and Chemical Corporation, 250 So.2d 99 (La. App. 4th Cir. 1971).
Our courts have had frequent opportunity to review death benefit claims resulting from a heart attack under the workmen’s compensation law. The law relative thereto is contained in the following quotes from cases dealing with the subject. In Prater v. Liberty Mutual Insurance Company, 182 So.2d 805 (La.App. 3rd Cir. 1966), it is noted:
“Our jurisprudence is now established that, in cases of this type, plaintiff bears the burden of proving by a preponderance of the evidence, as in any other civil case, that there is a causal connection between the employment activity and death or disability resulting from a heart condition. Nickelberry v. Ritchie Grocer Co., 196 La. 1011, 200 So. 330; Fontenot v. Camden Fire Insurance Association, 124 So.2d 640 (La.App. 3rd Cir. 1960); Seals v. Potlatch Forests, Inc., 151 So.2d 587 (La.App. 3rd Cir. 1963). In the recent case of Guillory v. New Amsterdam Casualty Company, 244 La. 225, 152 So.2d 1 (1963), our Supreme Court, in discussing what is meant by preponderance of the evidence in compensation cases, states that 'speculation, conjecture, near possibility, and even unsupported probabilities, are not sufficient * * *.’ In Bernard v. Louisiana Wildlife & Fisheries Commission, 152 So.2d 114 (La.App. 3rd Cir. 1963) this court said such proof must be by a ‘reasonable probability’, and that mere possibility is not sufficient. See also the very recent case of Adams v. Home Indemnity Co., 180 So.2d 51 (La.App. 3rd Cir. 1965; writ denied 248 La. 697, 181 So.2d 398) for a full discussion of claimant’s burden to prove causal connexity in this type of case.
“The jurisprudence is likewise established that where physical effort, although nothing more than usual and customary in the employment, causes, contributes to or accelerates death or disability from a heart attack, the requirements of a compensable accident are met. Hemphill v. Tremont Lumber Co., 209 La. 885, 25 So.2d 625 (1946); Seals v. Potlatch Forests, Inc., supra; Roberson v. Michigan Mutual Liability Co., 90 So.2d 465 (La.App. 2nd Cir. 1956); Franklin v. Old Colony Insurance Co., 150 So.2d 892 (La.App. 4th Cir. 1963).” (Prater v. Liberty Mutual Insurance Company, 182 So.2d 805, 807)
In Brown v. Kaiser Aluminum and Chemical Corporation, cited supra, it is stated:
“ * * * All that claimant is legally required to establish is that the decedent’s customary and usual duties of employment directly contributed to the employee’s demise, it being unnecessary that the injury be the result of unusual physical effort, or that it is the exclusive cause of the disability or death. Griffin v. Employers’ Liability Insurance Company, 186 So.2d 349 (La.App. 4th Cir. 1966); Turner v. Howard Motors, Inc., 192 So.2d 205 (La.App. 4th Cir. 1966). It is of no legal significance that a preexisting heart condition, i. e., arteriosclerosis and/or myocardial infarction may also have played a role in the occurrence of death. Guerrera v. City of New Orleans, 212 So.2d 223 (La.App. 4th Cir. 1968); and Garvin v. City of New Orleans, 243 So.2d 347 (La.App. 4th Cir. 1971). * * *” (Brown v. Kaiser Aluminum and Chemical Corporation, 250 So.2d 99, 104)
In Holman v. M. L. Bath Company, 226 So.2d 588 (La.App. 2nd Cir. 1969), writ refused, 254 La. 931, 228 So.2d 485, Judge *355 Bolin commented on the principal difficulty encountered by the courts in such cases as follows:
“Our jurisprudence is now settled that an employee may recover under the Workmen’s Compensation Act for disability resulting from a heart attack. The difficult problem in heart cases is defining the meaning of ‘accident’ as used in the statute and whether the accident [exertion] caused the disability. If the employee is able to show that he performed duties requiring the use of physical effort which precipitated the heart attack [accident] our courts have decided the requirements of the statute have been satisfied. See Nickelberry v. Ritchie Grocer Co., (1941), 196 La. 1011, 200 So. 330; Prater v. Liberty Mutual Insurance Co. (La.App. 3 Cir. 1966), 182 So.2d 805; and Bertrand v. Coal Operators Casualty Co., 253 La. 1115, 221 So.2d 816 (1968).” (Holman v. M. L. Bath Company, 226 So.2d 588, 589)
A careful review of the testimony convinces us that plaintiff failed to prove by a preponderance of the evidence that there was a causal connection between decedent’s employment activity and death resulting from his heart condition. We believe it would be most speculative to find that the physical activities contributed to or accelerated decedent’s death. As noted hereinabove, decedent’s duties could in no way be considered as requiring any strenuous or unusual exertion, notwithstanding the incident relied upon by plaintiff when decedent attempted to unstick a valve and injured his shins.
The medical evidence relied upon by plaintiff comes from the testimony of Dr. Selser. A fair appraisal of his testimony is that heart attacks are caused by heart disease, and it is conceivable that the activity of the deceased while at work could have contributed to his death, depending on the state of the disease. In other words, if the occlusion of the vessel was such that it was about to become completely blocked, then conceivably any activity could contribute to death.
With regard to the decedent’s state of health at the time, there is nothing in the record to show that his heart disease had worsened. To the contrary, Dr. Selser testified that he had made maximum recovery, and the record shows that decedent had no further complications following his initial heart attack.
Dr. McVea, on the other hand, was familiar with decedent’s working conditions and his job requirements. He had discussed with decedent the duties of his work and had finally permitted him to work one eight-hour overtime shift per week. He was also familiar with the dispensary records which reflected the minor nature of the injury to decedent’s shins. He was most definite that neither the minor injury nor working a double shift played any material part in decedent’s death. Both doctors attributed decedent’s death to heart disease.
Our review of the medical testimony convinces us that the trial judge did not commit manifest error in concluding that there was no causal connection between the death of the decedent and his employment and that plaintiff’s husband died solely as a result of the deterioration of his already diseased heart.
For the above and foregoing reasons, the judgment appealed from is affirmed, at the cost of plaintiff-appellant.
Affirmed.