CHASEZ, Judge.
Plaintiff, Gladys Marie Aubert Tros-clair, filed this suit against defendant, Kaiser Aluminum and Chemical Corporation, seeking to recover workmen’s compensation death benefits when her husband, Omer J. Trosclair, Sr., suffered a fatal stroke while employed by defendant.
After trial on the merits in the lower court there was judgment in favor of the plaintiff and against the defendant. From this adverse judgment defendant has perfected this appeal.
Omer J. Trosclair, Sr., was employed by defendant corporation at their Gramercy plant as a security guard whose primary duties consisted of checking incoming and outgoing traffic at the plant entrance gates; periodic utilization of a truck to check the plant grounds; and the dispensing of overtime lunches from the guard office. Essentially no strenuous exertion or physical labor was required for the performance of these duties.
On Saturday, January 2, 1971, the day of Trosclair’s demise, his duties were considered as “light” with the only unusual occurrence being the replacement of a fire extinguisher in one of the plant areas reporting a minor fire, which duty was performed at about 12:00 noon. At approximately 1:00 P.M. he engaged in a short conversation with two fellow employees, after which he left to secure some gas and oil for his truck and then to return to his gatepost in order to be relieved by the next shift. At 1:30 P.M. Trosclair had not returned and a search was instigated by the guard who was to relieve him. Trosclair was subsequently found dead inside a washroom in one of the plant buildings. Water from the tap was still running and the motor of the truck had not been shut off. Apparently his death was sudden, without visible evidence of prolonged pain.
The only medical evidence introduced at trial was that of the coroner and the plant physician who also acted as the family doctor for the deceased. Regretfully no autopsy was performed and the cause of death is listed as either coronary thrombosis or a cerebral vascular accident, the latter being more commonly known as a stroke. A coronary thrombosis is an occlusion by a thrombus or blood clot within a coronary blood vessel which restricts or stops entirely the flow of blood.
The Coroner originally diagnosed the cause of death as coronary thrombosis. This diagnosis, however, was based on inaccurate statements given to the doctor by the deceased’s fellow workers who declared at the time that Trosclair had suffered a previous heart attack three years earlier. It was later shown that Trosclair had suffered a mild cerebral hemorrhage on December 24, 1967 while at his home. Based on this fact, the coroner testified that his present opinion would be that the deceased died of a stroke or cerebral vascular accident. He also asserted that because of the sudden nature of the death a thrombus or blood clot causing death would be unlikely and it is a greater likelihood that death resulted from a ruptured blood vessel or, in this instance, a cerebral vascular accident. Additionally, the plant physician, Dr. Ward Turner, familiar with Trosclair’s past medical history because he was also the decedent’s personal physician, also designated the cause of death as a cerebral hemorrhage or ruptured blood vessel in the brain.
Plaintiff’s claim and adjudication thereof is dependent upon the existence of a causal connexity between the decedent’s employment activities and his resulting death from a heart attack. As was held in Brown v. Kaiser Aluminum & Chemical Corporation, 250 So.2d 99, 104 (La.App. 4th Cir. 1971); writ denied, 259 La. 807, 253 So.2d 66 (1971).
“All that claimant is legally required to establish is that the decedent’s customary and usual duties of employment directly contributed to the employee’s demise, it being unnecessary that the injury be the result of unusual physical ef *489 fort, or that it is the exclusive cause of the disability or death. Griffin v. Employers’ Liability Insurance Company, 186 So.2d 349 (La.App. 4th Cir. 1966); Turner v. Howard Motors, Inc., 192 So.2d 205 (La.App. 4th Cir. 1966). It is of no legal significance that a preexisting heart condition, i. e. arteriosclerosis and/or myocardial infarction may also have played a role in the occurrence of death. Guerrera v. City of New Orleans, 212 So.2d 223 (La.App. 4th Cir. 1968); and Garvin v. City of New Orleans, 243 So.2d 347 (La.App. 4th Cir. 1971).”
In the present case plaintiff stresses the incident involving the replacement of a fire extinguisher to denote physical stress occasioned by the decedent’s performance of duties. We find in the record, however, that deceased was 6' 1" and weighed 195 pounds and decedent’s duties that day required no stress producing physical labor other than the lone episode involving the fire extinguisher. It is also evident that the replacement consisted of lifting a full fire extinguisher which weighed approximately forty pounds, carrying it approximately five to ten feet from the storage area to his truck, loading it on the truck, driving to the site of the previous fire, again traversing some five to ten feet and replacing the used one with a full extinguisher from its wall bracket location and then returning to the storage area with the used fire extinguisher which weighed approximately 15 pounds.
We are of the opinion that this lone incident is not necessarily indicative of a stressful condition, especially in view of the surrounding circumstances present in this case and the opinions of the medical experts.
Decedent was seen one hour after he had replaced the fire extinguisher and seemed in good spirits with no apparent manifestation of physical discomfort or pain. The significance of the interval of time is important when it is considered conjunctively with the medical testimony. The stress of physical exertion causes an increase in blood pressure which can ultimately cause a rupture in a weakened vessel wall. However, a rupture or bursting of the vessel would cause immediate death. The increase of pressure is maximum during the course of physical exertion which indicates that if the physical labor performed by the decedent accelerated or aggravated his condition, immediate death would result. Additionally, if the exertion or stress resulted in a rupture or bleeding, visible manifestations would appear such as severe headaches and possible loss of balance. It was also asserted that if an aneurysm (weakened blood vessel) ruptured because of physical exertion a patient would be rendered unconscious immediately.
The medical history of the decedent shows that he previously suffered a mild cerebral hemorrhage which was unrelated to physical exertion as a catalytic agent. The coroner testified that because of this man’s history, coupled with the likelihood of a repetitious occurrence, he could not express any opinion of certainty as to whether the decedent’s activity, or lack of it, caused, accelerated, or aggravated his preexisting condition which led to his death. However, Trosclair’s own physician was convinced that his death was not accelerated by the performance of his duties which the doctor, as plant physician, knew to consist of light work. We therefore find that the stroke suffered by the decedent was not work induced or related to any duties performed that fatal day by the decedent.
Accordingly, the judgment of the lower court is reversed and it is now ordered that judgment be rendered in favor of the defendant, Kaiser Aluminum & Chemical Corp. and against the plaintiff, Gladys Marie Aubert Trosclair, dismissing her suit; costs in the lower court to be paid by the defendant and costs in this court to be paid by the plaintiff.
Reversed.