284 So.2d 71 (1973)
Elizan Thomas SHERMAN, widow of George Sherman, Individually and as natural tutrix of her minor children,
v.
SOUTHERN SCRAP MATERIAL COMPANY LTD., and the Travelers Insurance Company.
No. 5578.
Court of Appeal of Louisiana, Fourth Circuit.
September 26, 1973.
Rehearing Denied November 2, 1973.
Writ Refused December 19, 1973.
*72 Frank S. Bruno, New Orleans, for plaintiff-appellee.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Claude D. Vasser, New Orleans, for defendants-appellants.
Before STOULIG, BOUTALL and SCHOTT, JJ.
STOULIG, Judge.
This appeal involves a claim for workmen's compensation death benefits by the widow and minor children of George Sherman, a manual laborer who died of heart disease. Plaintiff alleged her husband was struck by a piece of iron pipe on July 2, 1968, and this trauma activated a pre-existing heart aliment that ultimately caused his death on September 14, 1968. Defendants, the employer, Southern Scrap Material Company Ltd., and its compensation insurer, The Travelers Insurance Company, asserted in their answer the death resulted from metabolic heart changes unrelated to Sherman's employment. From a judgment in favor of plaintiff, defendants have appealed.
The issues before us are (1) whether Sherman suffered an "accident" as defined by our Workmen's Compensation Law; and (2) whether his death was caused or accelerated thereby. The medical testimony adduced by each litigant to resolve these questions is in hopeless conflict.
It is not disputed that on May 1, 1967, George Sherman was hired to perform heavy manual labor by Southern Scrap Material Company, although a pre-employment physical examination indicated he had abnormally high blood pressure (154 systolic/112 diastolic). His duties included the driving, the loading and unloading of a truck.
On July 2, 1968, while unloading pipe, he was struck in the right side. (The record fails to disclose the severity or the location of the blow.) Although he experienced discomfort, he finished the workday and did not lose any time from his job through July 16. However, on July 12, he complained of shortness of breath, which persisted *73 until he was admitted to Veterans Administration Hospital on July 17.
His condition was diagnosed as "congestive heart failure and cardiomegaly secondary to arteriosclerotic heart disease." He improved sufficiently to be discharged on August 31, 1968, with a recommendation that he see a private doctor. He never returned to work. On September 14, 1968, he died suddenly while seated at the dinner table.
Dr. Roland Welch, a pathologist who testified as a medical expert for the plaintiff, performed the autopsy. He diagnosed the cause of death as "hypertensive cardiovascular disease." Based on his review of the pre-employment physical examination record for Sherman, he stated the cause of the abnormally high blood pressure should have been further investigated and under no circumstances should a man in this condition have been hired to perform heavy labor.
He stated unequivocally Sherman's job aggravated the congestive heart problem and shortened his life span. The most detrimental factor in accelerating chronic heart failure was Sherman's strenuous exertions on his job during the hot summer months. Welch viewed the July 2 trauma in the chain of causality as one more insult to an already overburdened heart, possibly the circumstance that triggered the final and fatal incident of congestive heart failure. He said it might have been the "straw that broke the camel's back." However, he places more emphasis on strenuous work in a hot climate as the causative factor that aggravated plaintiff's condition and accelerated his death.
The fact that Sherman died two months after his last workday did not have the effect of weakening the link of causality to job-related activities, according to Dr. Welch. He explained congestive heart failure, unlike myocardial infarct, can develop slowly and its gradual progression may not produce symptomatology sufficient to cause a patient to seek medical attention for between two to six weeks after the onset.
Defendants' medical expert disagreed. Dr. Ted Bloch, an internist, testified that death from a heart condition was not jobrelated unless death occurred on the job or within hours after finishing the day's work. In this case he attributed Sherman's death to "far advanced arteriosclerotic vascular heart disease" and "marked hypertrophy" (enlargement of the heart). It was his opinion the fatal condition was genetic and dietetic in origin, rather than work-connected.
He agreed Sherman's pre-employment physical indicated it was not advisable for him to engage in strenuous labor, and he further agreed heavy work could cause him to go into congestive heart failure. However, he pointed out Sherman's heart was not anatomically changed by his labor as evidenced by his improvement after rest and treatment in the hospital. The fact that he was discharged indicated to Dr. Bloch the congestive condition had been relieved and the heart's function had improved during this period.
In written reasons for judgment, the trial judge stated he found no connection between the July 2 trauma and decedent's heart ailment. He reasoned the death was compensable under the Workmen's Compensation Law because "heavy work in heat put such a strain on his heart that he went into heart failure, and though he enjoyed perhaps a temporary remission, the additional insult to an already badly diseased heart eventually caused death."
We are in complete accord with this reasoning. Although we do not relate the pipe injury to Sherman's fatal illness, we cannot agree with defendant's contention that plaintiff failed to prove decedent suffered an accident that falls within the definition of LSA-R.S. 23:1021.
It is well established the workmen need not suffer a traumatic injury by external violence to be considered an industrial *74 casualty. In heart disease cases, the claimant need only prove the injury or death is causally connected with the work effort of the employee in discharging his customary duties. See Brown v. Kaiser Aluminum & Chemical Corporation, 250 So.2d 99 (La.App. 4th Cir. 1971). In proving Sherman's strenuous work in the summer heat accelerated the onset of congestive heart failure that resulted in death, plaintiff met the burden of establishing an accident in fact had occurred. See Prater v. Liberty Mutual Insurance Company, 182 So.2d 805 (La.App. 3d Cir. 1966).
Turning to the question of causal connection between work effort and Sherman's death, we accept the opinion of the pathologist. His reasoning is more consistent with standards our Supreme Court summarized in Bertrand v. Coal Operators Casualty Company, 253 La. 1115, 221 So.2d 816, 827 (1969), as follows:
"In a case such as the present one, where there is proof of an accident and of a following disability without any intervening cause, it is presumed that the accident caused the disability. The criterion for causal connection between the accident and the disability is: Has the accident changed the plaintiff's condition so as to render him disabled and unfit for his former employment?"
In Bertrand the claimant suffered two seizures on the job on separate occasions and electrocardiograms measured the damage. In the instant case, while the proof of the accident is not so precisely pinpointed, nonetheless it is evident Sherman was admitted to the hospital the day following his last day on the job. The pre-employment physical examination establishes he was a prime candidate for congestive heart failure while performing heavy manual labor. Both experts agree to this. There is no evidence of any intervening cause. Thus the criterion of causality quoted is applicable to this case. It is beyond doubt that Sherman from the date of admission to the hospital to the time of death was unfit to return to his former employment.
The Bertrand opinion specifically rejected one of the factors considered by Dr. Bloch in concluding Sherman's death was not causally connected to an industrial accident. It will be recalled Dr. Bloch pointed out the heart was anatomically unchanged by Sherman's work effort as is evidenced by the fact that the congestive heart failure was alleviated when he was discharged from the hospital on August 31, 1968. This concept of causality was dismissed as being too "narrowly defined" and "overnicely refined." The Court stated:
"* * * The legal criterion in compensation cases involving heart disease should be whether the accident caused a change in the employee's physical condition which is disabling, and not whether the accident changed the diseased organ of the employee. * * * 221 So.2d at 828
For the reasons assigned, the judgment appealed from is affirmed. Costs of this appeal are to be borne by appellant.
Affirmed.
SCHOTT, Judge (dissenting).
I respectfully dissent, being of the opinion that the specifications of error set forth by appellants are meritorious as follows:

"I.
The trial court erred in allowing recovery in this case because no `accident' was proven within the meaning of R.S. 23:1021, even under the most liberal Louisiana decisions interpreting the accident requirement of the Louisiana Workmen's Compensation Act.

"II.
The trial court erred in awarding fatal benefits to the plaintiff where there was *75 insufficient proof to establish a causal connection between any `accident' and the ultimate death of the plaintiff."
The learned trial judge gave the following written reasons for his judgment:
"Plaintiff was employed as a laborer at Southern Scrap Material Co., despite a preemployment physical examination indicating a blood pressure reading considerably above normal.
"On July 2, 1968, he hit his side with a piece of pipe and though experiencing some discomfort he returned to work. The Court finds no connection between this episode and the illness that followed. "About July 12, 1968, at home, after work he experienced a shortness of breath. This continued at work through July 16. On July 17th, he was admitted to the Veterans Administration Hospital where his condition was diagnosed as chronic congestive heart failure. He was treated and apparently improved so that he was discharged on August 31, 1968. He remained at home and finally on September 14, 1968, at the dinner table, he died suddenly.
"Dr. Ronald Welsh, a pathologist, who performed the autopsy was of the firm opinion that plaintiff's heavy work in July heat threw the decedent into congestive heart failure which, though it seemed to improve temporarily, caused his death on September 14th.
"Dr. Ted Block, reviewing the medical records available to him concluded that there was no connection between decedent's work and his death. Dr. Block does not believe a heart attack or heart failure can be associated with work unless it has `temporal proximity' to the work meaning that the symptoms appear during or perhaps immediately following the work.
"Both doctors agree that the decedent had a very bad heart and should not have been doing heavy work. Dr. Block seemed to base his opinion on the fact that the work did not increase the degree of decedent's hypertensive cardio-vascular heart disease or the amount of arterio-schlerosis in his coronary arteries. Dr. Welsh believed that decedent's heavy work in heat put such a strain on his heart that he went into heart failure, and though he enjoyed perhaps a temporary remission, the additional insult to a an already badly diseased heart eventually caused death.
"The Court concludes that decedent's work caused the failure of the heart and this in turn caused the death, despite whatever particular mechanical episode was the immediate preciptive cause of decedent's sudden demise."
The foregoing, as well as the majority opinion of my colleagues, might well be a logical extension of the opinion of our Supreme Court in Bertrand v. Coal Operators Casualty Company, 253 La. 1115, 221 So.2d 816, and a recent opinion of this Court on the subject of liability of an employer under the Workmen's Compensation Act for a fatal vascular disease in Brown v. Kaiser Aluminum & Chemical Corporation, 250 So.2d 99 (La.App. 4th Cir. 1971), but I do not believe that the extension can be maintained within the framework of LSA-R.S. 23:1021 and 1031 which establish the legal basis for plaintiff's cause of action in this case and which provide in part as follows:
"§ 1021. Terms defined
"As used in this Chapter, unless the context clearly indicates otherwise, the following terms shall be given the meaning ascribed to them in this Section:
(1) `Accident' means an unexpected or unforeseen event happening suddenly or violently, with or without human fault and producing at the time objective symptoms of an injury.
". . .
"(7) `Injury' and `Personal Injuries' includes only injuries by violence to the physical structure of the body and such *76 disease or infections as naturally result therefrom. These terms shall in no case be construed to include any other form of disease or derangement, howsoever caused or contracted."
"§ 1031. Employees' right of action; joint employers, extent of liability
"If an employee not otherwise eliminated from the benefits of this Chapter, receives personal injury by accident arising out of and in the course of his employment, his employer shall pay compensation in the amounts, on the conditions, and to the person or persons hereinafter designated.
". . ."
In the application of these statutes to cases such as the instant case this Court in Brown v. Kaiser Aluminum & Chemical Corporation, supra, said the following:
"In applying the statutory definition of accident to compensation claims arising from vascular diseases, the pathological as opposed to the factual concept of the term has been utilized. No actual physical traumatic or bodily injury produced by external violence or other extrinsic agent need be established." Citing Danziger v. Employers Mutual Liability Insurance Company of Wisconsin, 245 La. 33, 156 So.2d 468.
The facts of the instant case are that the decedent had high blood pressure when he was originally employed by defendant but worked without difficulty through July 16, 1968. Upon admission to the Veterans Hospital on July 17, 1968, the following history was obtained from him:
"The pt is a 42 years old c/m who was well till about the evening of Friday, 7-12-68 when after coming home at night he could not sleep and got some SOB and abdominal pain on the right side.. . . ."
According to the testimony of decedent's wife, the plaintiff, during this time period, between July 12 and July 17, decedent continued with shortness of breath and kept having pains in his chest and although he had started out to work on July 17 he did not in fact work on that day, but on plaintiff's insistence he went to the hospital where he was admitted as aforesaid. He remained in the hospital until his discharge on August 31, and on September 14 suffered a fatal heart attack while at the dinner table with plaintiff. He never worked again after July 16.
It is significant that plaintiff testified in detail regarding an accident which decedent had suffered on July 2 when he was struck and bruised on his right side while loading pipe onto a truck during the course of his employment. She testified that from that time on decedent complained that his chest was hurting and that he was short of breath creating the clear-cut impression that decedent's troubles which led him to be hospitalized on July 17 were continuous and without interruption from the time of that job connected accident on July 2. But the trial judge found no connection between the episode of July 2 and the illness which followed, and the majority opinion states that "We are in complete accord with this reasoning. Although we do not relate the pipe injury to Sherman's fatal illness, . . . . ." Having rejected the incident of July 2 as the "accident" which gives rise to plaintiff's claim, the trial judge and the majority of this Court nevertheless find for the plaintiff on the basis that there is causal connection between the work effort of the employee consisting of strenuous physical work in the heat of the day and the onset of his fatal heart attack. They do so on the theory that decedent had a bad heart to begin with and that his type of work and the conditions under which he worked aggravated his heart condition, so that when he eventually died from the heart attack his death was compensable because each additional strain on his heart constituted an "accident" within the meaning of the act. This *77 result could be logically extended to include a worker who died several months after he left the employment upon medical testimony that had it not been for such employment his life span would probably have been longer. In effect, the employer would become the insurer of his employee against heart attack where there might be some causal connection from the type of work done by the employee and regardless of how long after such work is done the employee suffers death or disability because of such a heart attack.
It is on this basis that I find a distinction between the instant case and the Bertrand and Brown cases, as well as such cases as Smith v. Kaiser Aluminum, A Chemical Corp., 269 So.2d 605 (La.App. 4th Cir. 1972) and Turner v. Howard Motors, 192 So.2d 205 (La.App. 4th Cir. 1966).
In the Bertrand case, plaintiff on July 9, 1964, had an episode of weakness, dizziness and near fainting while doing heavy work. He was treated until June 1, 1965, when he returned to work. During that work day his heart began to beat erratically, he almost blacked out and fell to his knees, whereupon he returned to his doctor and was advised to stop working.
In the Brown case, decedent reported for work at 8:30 in the morning, broke for lunch at 11:45, had his lunch interrupted at 11:50 because of an emergency which arose on the job, returned to his lunch at 12:20, reported to the work shack for reassignment of work at 12:30, and at 12:45 while on the job made a complaint of pain. Thereupon at 1:15 he was examined in the nurse's station and pronounced dead at 2:09.
In the Smith case, decedent began work at 7:00 AM and after one hour of strenuous physical exertion in close proximity to extremely hot aluminum pots took a break in the air conditioned lunch room where, about ten minutes after purchasing milk and doughnuts, he had a sudden heart attack and died immediately.
In the Turner case, decedent performed his work until 3:20 PM when he knocked off, cleaned up his tools, washed himself and combed his hair. Thereafter he went to the rear door to await his wife and engaged in a conversation with his supervisor for about 20 minutes. During this conversation, at about 4:45 PM, decedent fell to the ground and within 20 minutes thereafter was declared dead.
As in the instant case, in all these cases decedent did heavy, strenuous physical work in the heat of the day and had a preexisting cardiac condition which was activated by the work done on his job, but unlike these cases, in the instant case decedent had worked only four hours on July 12, 1968, and while at home in the evening and having already gone to bed, he experienced symptoms which continued until his hospitalization on the 17th.
In the Bertrand case, the Supreme Court said the following:
"In a case, such as the present one, where there is proof of an accident and of a following disability without any intervening cause, it is presumed that the accident caused the disability. The criterion for causal connection between the accident and the disability is: Has the accident changed the plaintiff's condition so as to render him disabled and unfit for his former employment?"
In the instant case, there is no proof that decedent's disability occurred without any intervening cause between the time that he worked for four hours on July 12 and the time he first had his trouble that night, nor is there any proof of an occurrence while on the job that day either in the form of an external trauma or in the form of symptoms of internal trouble with decedent's bad heart while he was on the job so as to constitute the "proof of an accident" as referred to above. The Supreme Court went on to say in Bertrand:
"He has established an accident and his inability to return to work. Medical *78 opinion recognizes that an accident (exertion) caused some kind of injury, that the plaintiff is unable to return to work because of disability, and that the accident manifested the disability. . . .
"We have said repeatedly in workmen's compensation cases that it matters not that the accident could have occurred at another place and at another time or even at any time. We have said repeatedly that it is immaterial that the disability could have been brought on by causes other than trauma, if in fact trauma on the job which meets the standard of `accidental injury' within the Workmen's Compensation Act is a disabling factor.
"We conclude that the plaintiff has established the causal connection between the accident and the disability. He has persuaded us that but for the accident of June 1, 1965, he would not have the disability claimed . . . ."
A reading of this language convinces me that there must be a manifestation of the disability while the employee is on the job or at least in close proximity thereto for an ultimate heart attack connected therewith to be compensable. It can be seen from the above that the Supreme Court stressed the importance of the fact that the employee was on the job when he had his trouble on June 1, 1965, and that this constituted an industrial accident. There is no proof of such an accident in the instant case.
There are many equities running with the plaintiff in this case. The pre-employment physical examination given to decedent was fair warning to defendant that decedent was a prime candidate for heart disease and that he should never have been employed to do the kind of work which he did in this case, but the extension of coverage to the decedent in this case is beyond that which I find in the Workmen's Compensation statute as heretofore interpreted by the courts. By way of analogy, the legislature has in the case of firemen seen fit to provide coverage for vascular disease "regardless of whether the fireman is on duty at the time he is stricken with the disease or infirmity." LSA-R.S. 33:2581. But in the absence of legislative pronouncement on the subject, I believe that my colleagues have erred in finding defendants liable to plaintiff for workmen's compensation benefits in the instant case where decedent first had symptoms of a heart ailment while at home at night, having retired for the day, then sought medical treatment five days later and ultimately died almost two months after the last day he had worked.
I respectfully dissent.