JONES, Judge.
This is an action for total and permanent disability benefits under the Workmen’s Compensation Act. Also sought are penalties and attorneys’ fees based upon defendants’ alleged arbitrary and capricious refusal to pay compensation.
The trial court found that plaintiff proved an accidental injury on the job, and also proved disability, but denied plaintiff’s claim for the reason that he failed to prove the accident caused his disability. We approve the trial court’s finding of the accident and disability, but disagree with the trial court’s conclusion that plaintiff failed to prove his disability was caused by the injury. We find that plaintiff proved his disability was causally related to his injury, and therefore, reverse the lower court and grant judgment for plaintiff.
Plaintiff claims that in the course and scope of his employment as a manual laborer working on his employer’s drilling rig as a tong man, he sustained an injury to his back which caused him to be thereafter permanently disabled.
The plaintiff explained that his duties required him to handle the tongs which were used to secure the drilling pipe for the purpose of tightening and loosening it as the pipe went in and out of the hole. The tongs were attached to the derrick by a cable. Plaintiff’s accident occurred on February 6, 1975 after he had put the tongs on a joint of drilling pipe as it was going into the hole. Plaintiff was bending over and putting pressure against the tongs to hold them in place. As plaintiff was in this position the driller tightened up the joint of pipe using a winch on the floor of the rig, and as this occurred, the cable attached to the tongs on one end and the derrick on the other suddenly .became taut. *878 As the slack was suddenly pulled from the cable, which was to the rear of plaintiff as he was bending over holding the tongs in place, it slapped or struck plaintiff across the low back. One of plaintiffs co-workers, John C. Ramsey, testified he observed the cable slap plaintiff’s back at about the belt line. The co-worker indicated plaintiff made no immediate complaint of pain, and while he observed the incident, he attached no significance thereto. The coworker testified that in the past he had the same experience with the tong cable striking him across the back, but it created only a stinging or burning sensation similar to what one would feel when being struck across the back by an open hand or a rope.
While plaintiff testified he advised his co-workers of the incident, and told them his back hurt because of this incident on the date of the accident, all of the coworkers denied this conversation took place.
There is evidence that on Sunday night, February 9, three days after the accident, plaintiff called his foreman, R. L. Brant-ley, and told him he was sick in bed with the flu and intended to remain at home the following week. This conversation was admitted by Brantley. Plaintiff testified he also told Brantley that he was having soreness in his back at the time of this conversation; however, Brantley denied this. Plaintiff testified later in the week his back pain became more severe and on Sunday night, February 16, he called Mr. Brantley, told him he had hurt his back and needed to go to a doctor, and Mr. Brantley referred him to Dr. Carlton Kemp. Mr. Brantley admits the totality of this conversation, and prepared and filed an accident report based thereon.
On February 17, 1975 plaintiff went to Dr. Kemp with a complaint of back pain and gave a history of sustaining an accident to his back in an oil field accident on February 6, 1975. Upon examination, Dr. Kemp found plaintiff had a severe contusion of the low back at the right lumbar area with marked muscle spasm. Dr. Kemp prescribed muscle relaxants, pain relievers and heat, advised plaintiff to limit his activities and report back one week later.
Dr. Kemp testified as to the results of his examination as follows:
A. I found him to have a very severe contusion of the low back especially in the right lumbar area, with marked muscle spasm, tenderness, etc. He was given muscle relaxant and a pain reliever, advised to limit his activities, use heat and return to the office in one (1) week.
Q. Now how could such a contusion take place, or someone incur this particular type of injury?
A. From a severe blow, or a fall, or any traumatic type of experience.
It is extremely important to recognize that plaintiff had been at home in bed with the flu for the week intervening between his accident and the examination by Dr. Kemp. There is therefore not the slightest reason to believe there was any likelihood of plaintiff sustaining some new injury during that period of time which could have brought about muscle spasm found in his back by Dr. Kemp.
Dr. Kemp saw plaintiff again on February 25, at which time plaintiff felt good and wanted to return to work. Dr. Kemp released him to do so.
A careful reading of Dr. Kemp’s testimony concerning this visit reveals a possibility that he performed no examination on plaintiff at the time of this visit, but merely released him, based on plaintiff’s representation that he felt good and wanted to go back to work:
Q. The last time that you saw Mr. Kelly, what was your prognosis for him at that point ?
A. Excellent, the patient stated he had no problems whatsoever and he had *879 a full range of motion, and wished to be released, and of course, I did release him. (Emp. added)
Plaintiff attempted to return to work but was advised by his employer that he had been replaced.
On March 3, approximately a week after he had last seen Dr. Kemp, plaintiff still had back discomfort and attempted to locate Dr. Kemp for additional treatment and when he was unable to do so, he went to Dr. Kemp’s former partner, Dr. George Wright.
Dr. Wright’s testimony reflects at the time of his examination plaintiff complained of back pain and gave a history of injury to his back on February 6 when struck across the back with a cable when the slack was pulled out. Dr. Wright’s examination revealed plaintiff had discomfort in the back upon manipulation, with some soreness upon palpation. He diagnosed plaintiff’s injury as musculo-ligamentous strain. Dr. Wright’s examination one month post-accident, revealed subjective findings compatible with disability. These findings are substantiated by Dr. Kemp’s objective findings of muscle spasm on February 17,1975.
Dr. Wright continued the medication previously prescribed by Dr. Kemp. Plaintiff was next examined by Dr. Wright on May 15, 1975, at which time the doctor found muscle tightness in plaintiff’s back, and he next saw plaintiff on June 6 when he found some splinting of back muscles and back discomfort upon manipulation. At this point Dr. Wright observed it had been four months since plaintiff’s injury without his condition seeming to improve, and he made an appointment for the plaintiff to be examined on July 17, 1975 by Dr. Roy Ledbetter, Jr., an orthopedic surgeon in Monroe. The evidence reveals Dr. Wright prescribed, ultrasonic treatments for plaintiff, and that he received these in Dr. Wright’s office on the following dates: June 6, 16; July 10, 19, 28; August 22, 29, and September 18.
Dr. Ledbetter’s testimony reflects he saw plaintiff on July 17, 1975 and was advised by plaintiff that he injured his back on a drilling rig when he was struck across his back by a cable on February 6, 1975, and that he had continuously had pain in his low back following this injury. Dr. Led-better performed a routine orthopedic examination of plaintiff’s back which was negative with the following 2 exceptions: (1) Dr. Ledbetter found some tenderness at the lumbosacral joint about at the belt line level in the mid-line of the back, extending towards the right buttock; (2) upon performing the pelvic rocking test, that is, acute flexion of the knees and hips upon the trunk with the back placed in a rocking position, this produced some lum-bosacral discomfort.
Dr. Ledbetter’s diagnosis following examination was that plaintiff sustained a contusion as a result of the blow to the back which was resolving satisfactorily. The doctor at this time expressed the opinion that plaintiff would become asymptomatic in an additional six weeks, and that during this interval he could perform his normal activities with the exception of heavy-type activities.
Following Dr. Ledbetter’s examination of July 17, plaintiff was re-examined on August 29, 1975 by Dr. George Wright who at the time of this examination found plaintiff complaining of numbness in the right leg and also found an equivocal straight leg raising test. Based upon these findings, he re-scheduled plaintiff for another examination by Dr. Ledbetter on September 18, 1975. On this date Dr. Led-better’s examination evidenced an equivocal positive sciatic stretch test and diminished knee-jerk test. Dr. Ledbetter felt plaintiff’s condition might have been worse at the time of the second examination than the first, and therefore ordered a myleo-gram performed on plaintiff which was carried out in the St. Francis Hospital October 7, 1975. This test was essentially normal but did indicate an equivocal finding of disc pathology at the L-4-5 disc *880 space. This was reported by the radiologist who performed the myleogram and his opinion was corroborated by Dr. Ledbet-ter’s review of the films.
Dr. Ledbetter then re-examined plaintiff on October 16 and continued to find a diminished knee-jerk and equivocal sciatic stretch test. Following this examination Dr. Ledbetter continued to feel that the proper diagnosis of plaintiffs injury was that of a lumbar strain. He recognized, however, that the equivocally positive physical tests (sciatic stretch test and knee-jerk test) and the equivocally positive my-leogram made him feel there was a possibility of nerve root irritation which is often indicative of disc pathology. He felt plaintiff’s disability would resolve without surgery but recommended he remain under his observation and off from work, and limit his motion and activities. He declined to express an opinion as to duration of disability or percentage of permanent disability at that time. He considered there would be some period of time which would necessarily have to elapse before plaintiff would be able to return to work.
The trial court in disallowing compensation, relied on the Louisiana Supreme Court decision of Prim v. City of Shreveport, 297 So.2d 421 (La.1974). The facts in Prim were to the effect that plaintiff, who was employed by the city as a laborer, sustained a minor injury to his left leg when he slipped on a rock. He administered first aid to his leg and continued to work. Two weeks following this injury plaintiff’s leg became painful (it was disputed as to. whether this occurred when he was on the job) and he was carried to a physician who diagnosed plaintiff’s condition as a stroke which created paralysis in his left leg and drawing of his mouth on the left, which stroke was caused by abnormally high blood pressure. On trial of the case the sole medical witness testified that the injuries to plaintiff’s left leg 2 weeks prior to the stroke could not have passed a blood clot into the brain. He attributed the stroke to hypertension. The court found there was no causal relation between the minor leg injury and the stroke, and found the evidence otherwise insufficient to show that the stroke was work-commenced.
It was conceded that Prim was totally and permanently disabled as a result of the stroke, but there was no evidence he had any disability following the leg injury and no evidence that the injury to the leg caused the stroke. The Supreme Court, in approving the decision of the trial court denying recovery, which had been affirmed by the Second Circuit Court of Appeal, held that compensation claimants have the burden of proof to establish that there is a causal relationship between the disability and the employment accident, and that Prim failed to meet this burden of proof. We quote from that decision on this point:
Although procedural rules are construed liberally in favor of workmen’s compensation claimants, the burden of proof, by a preponderance of the evidence, is not relaxed. Thus, the testimony as a whole must show that more probably than not an employment accident occurred and that it had a causal relation to the disability. If the testimony leaves the probabilities equally balanced, the plaintiff has failed to carry the burden of persuasion. Likewise, the plaintiff’s case must fail if the evidence shows only a possibility of a causative accident or leaves it to speculation or conjecture. Id. p. 422.
The trial court cited the above quoted language from Prim in its reasons for judgment wherein the trial court found that plaintiff established there was an accident but held he did not sustain the burden of proving it caused his disability.
We find the Prim case inapplicable to the instant case for the reason that plaintiff Kelly established disability flowing from his back injury of February 6, 1975. At the time of Dr. Kemp’s examina *881 tion, approximately 10 days post-accident, the physician found muscle spasm in the back and gave a diagnosis of severe contusion of the low back and stated it could have been caused by any type of traumatic experience as a blow across the back by a cable. Dr. Kemp further recommended limitation of activity to plaintiff at the time of the examination. There was never any proof in Prim of disability flowing from the leg injury. Rather, the court found the leg injury had nothing to do with the disability which followed the occurrence of the stroke.
Plaintiff Kelly was seen by three physicians, had an extensive series of examinations and treatments from February 17, 1975 until the date of trial when he was still under the observation and treatment of Dr. Roy Ledbetter. He complained to each of his physicians of back pain, gave each a history of being injured when he was struck across the back with a cable.
An analysis of the record reflects the following chronological medical events which occurred to plaintiff in connection with the treatment to his back injury of February 6, 1975:
Initial exam by Dr. Kemp Feb. 17, 1975
Second exam by Dr. Kemp Feb. 25
First exam by Dr. Wright, who was seen because of the unavailability of Dr. Kemp) March 3
Second exam by Dr. Wright May 15
Third exam by Dr. Wright June 6
Ultrasonic treatments by Dr. Wright's office June 6, 16; July 10, July 19, 28; Aug. 22; and September 18
Initial exam by Dr. Ledbetter July 17
Fourth exam by Dr. Wright Aug. 29
Second exam by Dr. Ledbetter Sept. 18
Admission to hospital Oct. 6
Myieogram test Oct. 7
Dismissal from hospital Oct. 8
Exam by Dr. Ledbetter Oct. 16
There is no evidence in the record which would in the slightest indicate plaintiff could not have sustained as a result of his accident, when struck across the low back with a cable, the injury diagnosed by Dr. Kemp as a severe contusion of the low back; an injury diagnosed by Dr. Wright as a musculo-ligamentous strain, or an injury diagnosed by Dr. Ledbetter as a contusion as the result of a blow to the back which was resolving satisfactorily, based on his examination of July 17, 1975, or his primary diagnosis following his 3 examinations and the myieogram of lumbar strain. In fact the entire tenor of medical evidence is that the diagnosis of the various physicians set forth was based on a back injury caused as a result of a cable striking j>laintifffs back. Dr. Kemp said any type of traumatic experience could have caused the severe contusion of the low back he found.
Dr. Ledbetter was given the cable across the back description for the accident at the time of his first examination. After his first examination he gave his diagnosis of a contusion as a result of this blow to the back as described in the history given him by plaintiff, and felt that he had probably sustained a contusion which was resolving satisfactorily:
* * * he had sustained a contusion as a result of this blow to the back, as he described * * * by history, and I felt that he had probably sustained a contusion, and that this was resolving satisfactorily.
Dr. Wright was given the cable across the back description at the time of his initial examination and expressed the opinion : He incurred a contusion.
With regard to the issue of whether the disability was caused by the accident, there is in the record extensive testimony from Dr. Ledbetter to the effect that it was extremely unlikely that the direct blow described by plaintiff from a cable across his back could have caused a protruded disc. However, Dr. Ledbetter acknowledged there was a remote possibility that a comparatively insignificant traumatic event could cause injury which would cause a disc to commence degenerating and several months after there would be evidence of *882 nerve root irritation. It must be remembered that Dr. Ledbetter did not believe plaintiff sustained a disc injury but rather believed that his disability flowed from a musculo-ligamentous strain and at no point expressed the opinion that the direct lick could not have caused this type injury, but rather expressed an opinion that plaintiff sustained a contusion based upon the history given to him by plaintiff.
The facts in Johnson v. Travelers Insurance Company, 284 So.2d 888 (La.1973) indicates that plaintiff therein had a history of medical findings bearing substantial similarity to those of Kelly’s. Plaintiff Johnson sustained his injury on July 16, 1970 and was examined on that date, found to have a mild pain to touch in the sacroiliac area, and his condition was diagnosed as a sacroiliac sprain. One week after plaintiff’s back injury his physician found no limitation of motion and expressed the opinion that the plaintiff would recover with no residual disability. The plaintiff was examined by another physician on August 13, and August 20, 1970, who diagnosed his condition as lumbosacral strain and permitted him to return to light work, and this physician on October 24, 1970 said he was able to resume full work. On September 4, 1970 plaintiff was examined by an orthopedic physician who diagnosed his injury as strain and contusion of the lower back, hypertrophic arthritic changes of the lumbar spine and degenerative disc disease of the lumbosacral area and was found to be disabled. This same physician re-examined plaintiff on September 11 and found range of motions complete with no muscle spasm, and again re-examined him on September 18, 1970 and released him to resume work. Finally in October, upon reexamination, this physician found plaintiff disabled, and in November upon re-examination of plaintiff, he advised him to resume work. In December this same orthopedist found plaintiff disabled.
The defendant argued that because of some intervening work activity that plaintiff had engaged in subsequent to his initial accident that he failed to prove that the final determination of disability was causally related to the July 16 accident, and further argued that the plaintiff’s disability was due to his arthritic condition which was in no way work-related. The Supreme Court, while recognizing the general rule that a plaintiff must establish the causal relationship between the accident and his disability by a preponderance of evidence, held that the Johnson case fell within an exception to that rule, which was set forth in the opinion as follows :
In Bertrand v. Coal Operators Casualty Co., 253 La. 1115, 221 So.2d 816 (1969), we stated:
“In a case such as the present one, where there is proof of an accident and of a following disability without any intervening cause, it is presumed that the accident caused the disability.” Id. p. 891.
The court recognized that the plaintiff Johnson had established an on-the-job accident on July 16, 1970, ensuing disability with no intervening cause and therefore held his subsequent disability flowed from his proven on-the-job injury.
We hold that plaintiff Kelly in the instant case has established an accidental injury to his back by being struck across it with a cable causing injuries to the muscles of his back creating disability that has continued from its inception to the trial date and thereafter for an uncertain period of time.
The evidence strongly reflects that a disc injury would have been unlikely to have resulted from the accident described and proven by plaintiff. There was no intervening cause between plaintiff’s accident and his disability. In the event that plaintiff’s disability is the result of disc pathology, then the presumption relied upon in the Johnson case would be applicable to establish that plaintiff’s disability resulted from his accident.
*883 We do not feel that defendants were arbitrary and capricious in their refusal to pay plaintiff benefits to which he is entitled under the Louisiana Workmen’s Compensation Law because of the serious factual questions involved in the validity of his claim, and for these reasons plaintiff’s demand for attorneys’ fees and penalties are rejected.
For the reasons assigned, the judgment of the district court is reversed, and there is judgment herein in favor of plaintiff, David Kelly, against Murco Drilling Corporation and Insurance Company of North America, in solido, for workmen’s compensation at the rate of $65 per week commencing February 6, 1975 for a period not exceeding 500 weeks with legal interest on each installment from date due until paid, and for the further sum of $525.44 as medical expenses, plus legal interest thereon from date of judicial demand until paid, and for all costs of this suit.
Judgment reversed and rendered.